**Delores ALVINO, Petitioner-Respondent,**

v.

**Pietro Thomas ALVINO, Respondent-Appellant,**

and

**Anna Alvino, Third Party Defendant-Appellant.**

No. 45212.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 9, 1983.

Motion for Rehearing or Transfer Denied Oct. 12, 1983.

---

Leo Garvin, St. Louis, for Pietro Thomas Alvino.

Frank J. Niesen, Jr., St. Louis, for Anna Alvino.

Ellen Watkins, St. Louis, for petitioner-respondent.

PUDLOWSKI, Presiding Judge.

This is a consolidated appeal from a dissolution of marriage by Pietro Thomas Alvino, appellant, contesting the division of marital property and the awarding of attorney fees and by Anna J. Alvino, third-party defendant/appellant, contesting the divestment of property titled in her name. We reverse and remand.

Pietro Alvino, appellant, and Delores Alvino, respondent, were married on September 14, 1946. Eleven children were born of this marriage. By 1976, the relationship between the Alvinos had deteriorated. It was stipulated at trial that their marriage was irretrievably broken.

The trial for dissolution was conducted over eight different days from January 28, 1980 through March 19, 1981. Anna Alvino, the mother of Pietro Alvino, was made a party to her son's dissolution proceeding on September 30, 1980. At that time, the trial court ordered a transcript prepared. The transcript was completed on February 20, 1981. Trial was resumed on March 18, 1981. Respondent alleged as the basis for joinder that Anna Alvino was a necessary party because more than $45,000 of alleged marital property had been transferred to her subsequent to the filing of the dissolution of marriage and further that this sum was now held by Anna in her name alone.

During the marriage, Pietro Alvino was employed by Southwestern Bell Telephone Company. The comptroller supervisor of payroll at Southwestern Bell testified that Pietro's net salary at the time of trial was $1,123.04 per month. In addition, Pietro worked at various part-time jobs throughout the marriage. Delores Alvino, at times, also worked outside the home. However, it was Pietro who controlled the finances in the household.

In relation to his employment, Pietro was presently eligible to retire from the telephone company and begin receiving monthly pension payments in the amount of $625.07. Payments under the pension plan were contingent upon Pietro being retired from his employment. As long as he continued to work for the telephone company, Pietro was not eligible for any payments, nor would his estate be entitled to any benefits in the event of Pietro's death before his retirement. Further, the pension plan automatically provides the employee with 90% of the total benefit to be paid unless the employee elects otherwise.

In its decree of dissolution, the trial court determined the pension plan to be marital property and awarded it to Pietro. This award was an attempt by the court to arrive at an equal division of assets between Pietro and Delores. In addition, the court awarded Delores the sum of $500 per month as maintenance and $200 per month for each of two minor children as child support. The court also granted judgment against

Pietro in favor of three doctors and a private educational institution. Lastly, the court concluded that the money held in Anna Alvino's name was marital property belonging to Pietro and Delores and as such divested Anna Alvino of all interest. This appeal follows.

## I

Third party defendant/appellant, Anna Alvino, raises two points on appeal: (1) whether the trial court erred in divesting her of interest in accounts at various financial institutions by depriving her of a reasonable opportunity to cross-examine and confront testimony and exhibits introduced into evidence; and (2) whether there was substantial evidence to support the proposition that said accounts were in fact marital property belonging to Pietro and Delores Alvino. We resolve these alleged errors by disposing of the first issue.

The dissolution action between Delores and Pietro Alvino was heard over the course of nine months in 1980 on eight different days commencing on January 28, 1980. From the beginning, a major portion of respondent's case concerned assets standing in the name of Anna J. Alvino. Respondent adduced evidence tracing the ownership and control of several bank accounts belonging to Anna in an attempt to prove that said accounts were marital property and subject to distribution by the court. She sought to have the court award her this property.

Respondent rested her case having introduced into evidence more than 50 exhibits, the vast majority of which dealt with Anna Alvino's property. Respondent testified that she claimed an interest in bank accounts in Anna J. Alvino's name. However, respondent waited until August, 1980, to join Anna Alvino as a third party.

On March 17, 1981, Anna Alvino moved for a mistrial because the evidence before the court to adjudicate her interest in said property had been adduced in her absence without notice or opportunity to defend same. The motion was denied. The action complained of by appellant, Anna Alvino, is more accurately described as the denial of Anna's motion for a mistrial. We shall proceed upon that basis.

Generally, all parties interested in the subject matter of litigation should be joined. It is beyond dispute that the trial court was obligated under Rule 52.04 to join Anna Alvino as a party after it became apparent that she held title to certain assets at issue in the dissolution proceeding. *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270 (Mo.App.1979).

Further, Rule 52.06 provides in part that parties may be added to a pending case on a motion of any party or on the court's own initiative "at any stage of the action and on such terms as are just." The decisions whether to grant a mistrial or delay the proceedings is one committed to the sound discretion of the trial court. Thus, the issue at large is, whether the trial court abused its discretion by proceeding with the marriage dissolution on such terms that were unjust.

Respondent contends that Anna Alvino had approximately six months to prepare for trial from the time she was joined until the time the trial resumed. A close examination of the record reveals this fact to be misleading. On September 30, 1980, the trial court ordered a transcript prepared. That transcript was completed on February 20, 1981. As a result, Anna Alvino would have received the transcript approximately one month prior to trial. After a review of the number of exhibits and witnesses, we have determined that one month was an insufficient amount of time to prepare for trial and was unjust.

Respondent further contends that no prejudice resulted because Anna Alvino had the opportunity to recall any witness for the purpose of cross-examination and respondent, herself, recalled many of the same witnesses that she had previously called. This reasoning begs the question. Assuming that Anna Alvino had the opportunity to recall any witness, such opportunity would be futile without a reasonable opportunity to read and study the volumi-

nous transcript and exhibits. Anna Alvino had no reasonable opportunity to prepare her examination of the witnesses previously called. Under our system of justice, expediency is never exalted over the interest of a just and fair trial and due process.

■ Respondent also suggests that both Anna and Pietro Alvino had a common goal in the litigation and as such, each party does not have the right to an independent cross-examination. *Thompson v. Curators of the University of Missouri*, 488 S.W.2d 617 (Mo.1973). While respondent is correct in her assertion of law, such is not dispositive of this case.

Anna and Pietro Alvino did not have a common goal. Ann Alvino was claiming a sole interest in the funds and as such any divestiture of said interest would fall directly on her. While it is amenable to argue that a son would champion for his mother's interest, such is not always the case. Pietro's interest in the alleged funds was two-fold. Pietro did allege the funds to be his mother's, however, this was not his prime concern. Pietro's true interest was in defending against his wife's allegation that he had embarked upon a scheme to transfer marital property. There was no identity of interest between Anna and Pietro with respect to this allegation.

This court, in the circumstances of this case, cannot permit the late entry of this particular party because such late entry in any event cannot be on terms which "are just" as required by Rule 52.06. Confronted with these circumstances the trial court should have granted the mistrial. Therefore, we reverse and remand for a new trial on the issue whether certain assets titled in Anna Alvino's name are marital property belonging to Delores and Pietro Alvino.

## II

In the second stage of this appeal, Pietro Alvino contests the division of marital property. More specifically, Pietro alleges abuse of trial court discretion in the award-ing of maintenance and child support; trial court error in determining that Pietro's pension plan was marital property; trial court error in awarding unreasonable and excessive attorney fees; and trial court error in entering a judgment against the husband in favor of three doctors and the private educational institution when they were not parties to the action.

Pietro alleges several errors pertaining to trial court abuse of discretion in its award of maintenance and child support. The first claim is that the trial court failed to consider the ability of Pietro Alvino to meet his own needs while meeting those of his wife and children.

We initially conclude under the requirements of § 452.335 subsection 1 RSMo.1978, that Delores Alvino is entitled to maintenance. However, a problem does arise with the amount awarded and Pietro's ability to pay. In determining the amount of maintenance to be ordered the trial court must consider relevant factors which are set forth in § 452.335. Factor (6), which is relevant to this appeal, directs the court to consider the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

■ The record indicates that at the time of trial, Pietro had a net income of $1,173.04 per month.[1] However, the trial court awarded respondent $500 per month maintenance and $400 per month child support. As is often the case, the needs of the dependent wife and children are greater than the husband/father's ability to pay. In these cases, the court can only attempt to carve out as much as possible from the husband's paycheck for the wife and children while still leaving the husband enough to support himself. In the case at bar, the award of maintenance when combined with the child support award totals $900 or approximately 80 percent of the husband's net earnings. Pietro Alvino is left with $273.04

---

1. The record indicates that Pietro's net salary earned at Southwestern Bell at the time of trial was $1,123.04 per month. In addition, Pietro was awarded one half of AT & T stock declared to be marital property. This stock yields a dividend of approximately $50.00 per month.

to meet his own needs. This sum leaves appellant totally unable to meet his own expenses. We therefore reverse and remand for a new determination of maintenance and child support which is consistent with appellant's ability to support himself.

Pietro's next alleged error challenges the trial court's determination that his pension plan is marital property. It has been stated that a pension is not earned on the last day of employment prior to retirement, but is a form of deferred compensation which is attributable to the entire period in which it was accumulated. *Kuchta v. Kuchta,* 636 S.W.2d 663 (Mo. banc 1982). Recently our Supreme Court has attempted to resolve the issue of when a person vests and would be subject to distribution. The court ruled:

> Stage I—If the employment were terminated, and the spouse had no right to receive anything, presently or in the future, except the amount he had contributed to the plan (plus interest), retirement benefits would be "non-vested" and "non-matured."
>
> Stage II—If the employment were terminated, and the spouse was entitled to receive certain benefits beyond prior contributions, but only after reaching a designated retirement age, such retirement benefits would be "vested" but "non-matured."
>
> Stage III—If the employment were terminated, and the spouse was entitled presently to certain benefits, beyond prior contributions, such retirement benefits would be "vested" and "matured."

*Kuchta* at 665.

In the present case, we are dealing with a Stage III pension. The pension plan was not contributory and as such if Pietro's employment were terminated, he would be entitled to only those benefits contributed by his employer. These retirement benefits would be vested and matured.

We turn, therefore, to a consideration as to whether or not the trial court abused its discretion as to the division of this particular asset. It is always a difficult task for the trial court to follow the mandate of the statute, § 452.330 RSMo.1978, to make the

property division just and equitable, having regard for the statutory factors to be taken into consideration. It is manifestly more difficult when one of those items of property has not yet come into being, and when once it does come into existence, has an unpredictable life. One method of attempting to resolve the difficulties is to develop a percentage division of the monthly amount of the pension or retirement benefit which will remain constant during the period of time in which the pension is payable. Another method is to award the entire pension to one of the parties, generally the party whose work effort generated the pension, and to award to the other, in lieu of participation in the pension, a sum certain, which may, or may not, be payable over a specified time period.

■ In the case at bar, the trial court chose this latter method of division. We note that the pension is totally contingent upon Pietro's actual retirement. Should Pietro choose to continue his employment he would receive nothing at this point. This result would give respondent $62,602.18 or approximately 82.5 percent of the household assets and leave Pietro with $14,460.00 or approximately 17.5 per cent.

■ To avoid some of the problems inherent in lump-sum awards, the court may instead fashion its decree to award the non-employee spouse a proportionate share of the retirement payments if, as, and when the employee spouse actually begins receiving payments. *Miser v. Miser,* 475 S.W.2d 597 (Tex.Civ.App.1972). (Wife to receive 85/240's of retirement payments if, as, and when husband receives them). *See also Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355 (1975), *Davis v. Davis,* 13 Wash.App. 812, 537 P.2d 1048 (1975), *Waters v. Waters,* 75 Cal.App.2d 265, 170 P.2d 494 (1946).

In its disposition of property, the trial court attempted to arrive at an equal division of assets between both parties. With this goal in mind, we conclude that the division of property was not just.

■ The economic circumstances of each spouse at the time the property is to be-

come effective, is a relevant factor the court shall consider when dividing marital property. § 452.330.1(3) RSMo.1978. To arrive at an equal division of property, which was the trial court's intent, appellant would have to terminate his employment and choose the lump sum option. Forceable retirement is not just and not economically sound.

Therefore, we reverse and remand for a just and equitable distribution of assets, keeping in mind the contingency of the pension attached to Pietro's employment.

■ On the issue of attorney's fees, it should be noted that the court ordered the sum of $11,602.90 to be paid to respondent's counsel from the sums of money held by Anna Alvino and not from Pietro Alvino.[2] As stated previously, the trial court erred in divesting Anna Alvino of her interest in those funds. As a result, the trial court erred in ordering the payment of attorney's fees from these assets. We avoid at this time any discussion on the reasonableness of the attorney's fee and reverse and remand for a new determination on the liabilities of both parties in respect to respondent's attorney's fees and expenses after final disposition on retrial.

Lastly, Pietro contends and respondent agrees that the trial court erred when it entered judgment against Pietro in favor of three doctors and a private educational institution. Acknowledging this error, the issue becomes what is the appropriate remedy.

Rule 84.14 permits the Appellate Court to "award ... or give such judgment as the court ought to give." The rendition or modification of a judgment, by the Appellate Court, is favorable where no further factual adjudication is necessary, for to do so is in the interest of laying litigation to rest and settling the parties' rights. *Calia v. Calia*, 624 S.W.2d 870 (Mo.App.1981). In the instant case, there is no dispute as to the facts of the debts. It is apparent that the court's entry of judgment in favor of the various creditors were merely an attempt to assign Pietro Alvino the responsibility for paying such debts. This may be inferred from the relevant language in the decree:

> The following debts ... shall be the responsibility of the respondent and the Court grants judgment in the amounts shown below to the persons show below against respondent ....

■ A court has the authority to distribute debts in the sense that one party may be assigned the primary duty to pay a debt and to hold the other harmless thereon. *Cain v. Cain*, 536 S.W.2d 866 (Mo.App.1976). Such was the manifest intent of the trial court. Since there is no need for an additional factual adjudication we amend the decree of the trial court by amending the provisions regarding the debts so as to order appellant Pietro Alvino, responsible for the payment of said debts and to hold respondent harmless thereon.

The judgment is reversed and remanded for a new trial on the issue of Anna Alvino's interest in various financial institutions; reversed and remanded for a new determination of maintenance and child support based on appellant, Pietro Alvino's ability to meet his own needs while meeting those of respondent; reversed and remanded for a just and equitable distribution of marital property; reversed and remanded for a new determination of the liabilities of both parties in respect to respondent's attorney's fees and expenses; and reversed and remanded so as to order appellant, Pietro Alvino, responsible for the payment of the various enumerated debts occurred during the marriage.

So ordered.

SMITH and KELLY, JJ., concur.

---

2. The court ordered the sum of $11,602.90 ($10,000.00 for fees and $1,602.90 for expenses) to be paid to respondent's counsel, Ellen Watkins, from the sums of money held by Anna Alvino which the court had determined was marital property of the parties. The remainder of the money held by Anna Alvino ($32,263.32) was distributed to the parties: $17,810.57 to respondent $14,452.75 to appellant, Pietro Alvino. The effect of the order was that approximately one-half of respondent's attorney's fees and costs were paid by Pietro Alvino.