704 S.W.2d 258 (1986)
Eugene Z. FRERICHS, Petitioner-Respondent,
v.
Deborah Jo FRERICHS, Respondent-Appellant.
No. 48747.
Missouri Court of Appeals, Eastern District, Division Two.
January 28, 1986.
*259 David C. Godfrey, Clayton, William R. Gartenberg, St. Louis, for respondent-appellant.
Todt & Walther, Michael C. Walther, Alan J. Agathen, Clayton, for petitioner-respondent.
SIMON, Presiding Judge.
Deborah Jo Frerichs (appellant) appeals from the granting of a decree of dissolution by the Circuit Court of St. Louis County to her husband, Gene Frerichs (respondent), and challenges the award of all marital properties to respondent and the award of twenty-five thousand dollars ($25,000) to appellant in lieu of marital property. In addition, appellant received monthly maintenance of three thousand dollars ($3,000) for one year and attorney's fees and court costs totaling ten thousand dollars ($10,000). Appellant contends the trial court erred in: (1) granting a decree of dissolution where she denied the marriage was irretrievably broken and petitioned for a decree of legal separation; (2) determining and distributing marital and separate properties; and (3) awarding an inadequate sum for attorney's fees where the court found that she did not have sufficient assets to pay her attorneys.
On August 1, 1978 appellant began working at American Tool Labs Inc. for respondent, the president, as his executive secretary. Shortly thereafter appellant and respondent began to date and eventually he *260 moved into her townhouse with her and her son. He paid rent and expenses during his stay. At that time, he was married, but was separated awaiting a divorce which became final in December, 1978. In September, 1981 the relationship intensified and she and her son moved into his home on Trent Drive. Subsequently, a marriage date was discussed and after several postponements, the marriage took place on August 27, 1982. Several transactions involving personal and real properties, the subject of appellant's second point on appeal, occurred both prior to and after the date of marriage. Those events will be discussed in our review of appellant's second point. During 1983, Billy Scatura, an old friend of appellant, moved into respondent's home on Trent Drive. Testimony is conflicting as to whether respondent approved of this action. Sometime after this event, marital discord developed and the couple separated on April 20, 1983. Respondent filed for a decree of dissolution around April 25, 1983, after an eight month marriage, alleging that there is no reasonable likelihood the marriage can be saved and that the marriage was irretrievably broken. In her amended answer appellant denied that the marriage was broken and asked that respondent's petition be dismissed or alternatively that the court enter a decree of legal separation should it find the marriage broken. Both parties filed for adult abuse protective orders and a temporary restraining order was issued against respondent ordering him to remain away from the Trent Drive home. Following an extended hearing and the submission of proposed findings by both parties, the trial court entered an order of dissolution and set apart to respondent as his separate property all of the real estate, farm equipment, three (3) horses, and horse equipment. All items of marital property were awarded to respondent and appellant received twenty-five thousand dollars ($25,000), four (4) horses, personal effects, a monthly maintenance of three thousand dollars ($3000) for twelve (12) months, and ten thousand dollars ($10,000) in attorney's fees and costs. Appellant's motions to amend the decree and for a rehearing were denied.
In her first point on appeal appellant alleges that the trial court erred in entering a decree of dissolution because § 452.305 RSMo 1978 (hereinafter all references shall be to RSMo 1978 unless otherwise noted) requires the court to enter a decree of legal separation if a party so requests and has denied, under oath, that the marriage is irretrievably broken. In the same point, appellant also contends the trial court neglected to make a finding of any preliminary factor leading to the conclusion that the marriage was irretrievably broken under § 452.320.2(1)(a-e).
Initially, we consider whether the trial court properly found the marriage to be irretrievably broken. The trial court found that "there is no reasonable likelihood that the marriage can be preserved and that the marriage is irretrievably broken." Additionally the court found that the "Petitioner [respondent] is a more credible witness and that the Respondent [appellant] is not a credible witness." Appellant contends that the court's finding, that the marriage is irretrievably broken, is insufficient in that it fails to set forth any preliminary factors enumerated in § 452.320.2.
Section 452.320.2(1) provides in pertinent part that:
2. If one of the parties has denied under oath or affirmation that the marriage is irretrievably broken, the court shall consider all relevant factors, including the circumstances that gave rise to the filing of the petition and the prospect of reconciliation, and after hearing the evidence shall
(1) Make a finding whether or not the marriage is irretrievably broken, and in order for the court to find that the marriage is irretrievably broken, the petitioner shall satisfy the court of one or more of the following facts:
(a) That the respondent has committed adultery and the petitioner finds it intolerable to live with the respondent;
(b) That the respondent has behaved in such a way that the petitioner cannot *261 reasonably be expected to live with the respondent;....
Clearly the statute does not require the trial court to explicitly state which of the enumerated factors it relied on in concluding the marriage to be irretrievably broken. Simply, it requires the petitioner to "satisfy the court of one or more of the enumerated factors." § 452.320.2(1)(a-e). Appellant relies on In re Capstick, 547 S.W.2d 522 (Mo.App.1977) as authority for the proposition that one or more factors must be stated by the court. Her reliance is misplaced. In Capstick, petitioner failed to present evidence to substantiate conclusory allegations in her petition that the marriage was irretrievably broken. Thus, we held that petitioner failed to satisfy the court of one or more of such factors and remanded to allow petitioner an opportunity to "satisfy the court" of one or more factors, and for the court to make a finding of whether the marriage was irretrievably broken. Capstick, 547 S.W.2d at 524-5. In the present case, respondent presented substantial evidence satisfying the court of one or more of the factors in § 452.320.1. See In re Marriage of Pate, 591 S.W.2d 384, 388 (Mo.App.1979). Thus, we find no error in the finding that the marriage was irretrievably broken.
Further, appellant contends that the trial court should have entered a decree of legal separation rather than a decree of dissolution. Section 452.305.2, in pertinent part, provides:
2. If a party requests a decree of legal separation rather than a decree of dissolution of marriage, the court shall grant the decree in that form.
Appellant, in her answer, requested that should the court find the marriage irretrievably broken, the decree be granted in the form of legal separation. We must conclude that pursuant to § 452.305(2) she is entitled to a decree of legal separation. Weibert v. Weibert, 632 S.W.2d 86 (Mo. App.1982). Accordingly, the trial court erred in failing to enter a decree of legal separation.
In her second point, appellant challenges the trial court's designation of certain properties as separate property of respondent. In our review, we shall sustain the decree of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).
Initially we note that the source of funds doctrine of Hoffmann v. Hoffmann, 676 S.W.2d 817 (Mo. banc 1984) applies retroactively to cases tried prior to its advent. Sumners v. Sumners, 701 S.W.2d 720 (Mo. banc 1985). Under the "source of funds" doctrine the character of the property is to be determined according to the source of funds which financed the purchase. Hoffmann, 676 S.W.2d at 824.
In this point, appellant contends that the trial court erred in finding that the mares, Gala Luna and Corzaan, and their foals were separate property of respondent because the money used to purchase the horses from respondent's agency account was transferred into a personal account (marital property) and there became commingled with and transmuted into marital funds. Thus, she concludes that the horses, purchased with marital funds became marital property. The record indicates that during the marriage respondent purchased two pregnant mares, Gala Luna and Corzaan, from Stephens College with checks drawn on the Centerre bank account, which is marital property. The evidence indicates that the two checks, one for two thousand dollars ($2000), in payment for the horses, and a second for eight thousand dollars ($8000.00), a donation, were written to Stephens College on December 30, 1982. There was also testimony that a few days after these checks were written, respondent directed his bank to transfer ten thousand dollars ($10,000) from his agency account for the specific purpose of covering those checks. The parties stipulated that the agency account was respondent's separate property. The issue is whether the transfer of the funds from respondent's *262 agency account through the Centerre account to purchase the two horses effectively transmuted those funds to marital property.
Property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed marital property. § 452.330.3 RSMo 1984. The presumption may be overcome by showing that the property was acquired in exchange for property acquired prior to the marriage, and that the transfer was not intended as a provision for settlement or gift to the other spouse. Conrad v. Bowers, 533 S.W.2d 614, 622 (Mo.App.1975); In re Marriage of Pate, 591 S.W.2d 384 (Mo. App.1979).
Here, respondent traced the funds from his agency account to the marital account. The checks used in the transaction were drawn on the marital account. Respondent testified that the Centerre account was a conduit for the transaction. He offered evidence identifying the segregated personal funds and tracing these funds throughout the transaction. The record indicates that the funds were deposited in and drawn from the Centerre account in a short time. The purchase price did not require any additional funds beyond the ten thousand dollars ($10,000) transferred from the agency account. Additionally, the record does not indicate that respondent intended to give the money to the marital estate. Busby v. Busby, 669 S.W.2d 597, 600 (Mo.App.1984). Respondent, having placed his separate property funds into the marital account, has demonstrated by clear convincing evidence that neither a gift nor a settlement was intended. Conrad v. Bowers, 533 S.W.2d at 622. Accordingly, the trial court did not err in awarding the horses to respondent.
Appellant further challenges the trial court's finding that the horse, Rula ja La Canada (Canada), and a show cart were respondent's separate property. Appellant contends that there was evidence that these properties, though purchased by respondent prior to the marriage, were intended as gifts for appellant. The record indicates that respondent purchased the horse and cart prior to the marriage, and that the horse was registered in the name of appellant. Appellant testified that she had accompanied respondent to a meeting in Tucson and there found a horse (Canada) that she wanted and asked respondent to buy it for her. She also stated that she thought respondent had purchased Canada as a gift for her as he had done before with another horse. Respondent testified that on occasion, prior to their marriage, he had purchased items for appellant at her "whim or request," but denied that Canada and the cart had been purchased as gifts for appellant. The trier of fact, the trial court, determines the credibility of the witnesses. Busby, 669 S.W.2d at 599. The trial court chose to believe respondent, finding him to be a more credible witness. We defer to that finding. Thus, there is substantial evidence to support the trial court's finding that Canada and the show cart are respondent's separate property.
As to the remaining allegations of error in the designation of separate and marital property, we have reviewed the record and conclude there is substantial evidence to support the trial court's findings. Murphy v. Carron, 536 S.W.2d at 32. An extended discussion would have no precedential value.
Appellant also contends that the trial court erred in awarding her the cash value of marital property instead of a portion of the tangible property, horses and equipment. Appellant argues that the cash award is insufficient to replace the tangible property she should have received and thereby denies her the ability to continue her livelihood in the horse business. In her answer appellant prayed for an equitable division of the marital property. In her brief, appellant admits that she does not take issue with the apparent logic behind the proportion (83%) of marital property awarded to her but rather with the paucity of property deemed marital and the cash award in lieu of property. Appellant has the burden of showing error in the court's *263 findings. In re Marriage of Brewer, 592 S.W.2d 529, 532 (Mo.App.1979). She has alleged only that the amount awarded would have been greater had the court properly determined certain separate property to be marital. We have already determined that the trial court did not err in the property distribution and designation. The award of cash in lieu of property represents the trial court's determination of the proportion of marital property to which appellant is entitled having considered all relevant factors. Section 452.330. Appellant does not contend that the proportion awarded was unjust. We find no error in the trial court's award.
Appellant's final contention is that the trial court erred in failing to award her all of her attorney's fees and costs where the trial court found appellant "does not have sufficient funds with which to pay her own attorney's fees." The trial court is an expert in the reasonableness of attorney fees and its judgment should only be modified upon finding an abuse of discretion. Hoffmann v. Hoffmann, 676 S.W.2d 817, 828-29 (Mo. banc 1984). There was testimony by appellant's attorneys indicating that the total fee for legal services exceeded thirty thousand dollars ($30,000). The record reveals that the court considered the relevant factors, including the parties' financial resources, and ordered respondent to pay ten thousand dollars ($10,000) towards appellant's attorney's fees. A court need not award the full amount but only a reasonable amount. Eastes v. Eastes, 590 S.W.2d 405 (Mo.App.1979). The trial court is acquainted with the issues and intricacies of the proceedings and in its discretion, awarded what it considered a reasonable amount for services rendered. We find no abuse of discretion merely because the entire fee was not awarded where the award was reasonable. Cissell v. Cissell, 573 S.W.2d 722, 725 (Mo. App.1978). The point is without merit.
Accordingly, we reverse and remand to the trial court with directions to enter a decree of legal separation. In all other respects the judgment is affirmed.
STEPHAN, C.J., and GENE HAMILTON, Special Judge, concur.