Beatrice M. FEINSTEIN,
Petitioner/Respondent,

v.

Bernard D. FEINSTEIN,
Respondent/Appellant,

and

Karen Schwartz and David J. Feinstein,
Defendants/Appellants,

and

Mordechai Schwartz, and Elan Schwartz,
Jonathan Schwartz and Daniel
Schwartz, Minors, Appellants.

No. 54176.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 30, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 20, 1989.

Application to Transfer Denied
Nov. 14, 1989.

Kenneth Lay, Robert Tucker, Michael James, Clayton, for Mordechai Schwartz, Elan Schwartz, Jonathan Schwartz, Daniel Schwartz.

Morris Stokes, Cary J. Mogerman, Clayton, and Irl Baris, St. Louis, for Bernard Feinstein, Karen Schwartz, David Feinstein.

Frank Susman, Katherine Butler, Clayton, for Beatrice Feinstein.

SATZ, Judge.

This is a dissolution action. Husband and wife were married on October 19, 1971. At that time, husband was 56 years of age and wife was 48. It was the second marriage for each of them. Wife had three children by her first husband, all of whom were adults when the parties married. Husband also had adult children from his first marriage, David and Karen, both of whom reside in St. Louis. Husband's daughter Karen is married. She and her husband, Mordechai Schwartz, have three minor children, Elan, Jonathan, and Daniel.[1] Husband and wife separated after the Thanksgiving holiday in 1984, and wife filed a petition for dissolution on December 12, 1984. In that petition, she named husband's daughter Karen as a defendant, and, in her first amended petition, she added husband's son David as a defendant. Wife joined husband's children as defendants based upon her allegations that marital property was in their "name, title, possession and/or control" and that husband asserted property acquired during the marriage belonged to his children. Husband filed a cross-petition for dissolution. The case proceeded to trial on June 3, 1986, with husband as respondent and his children, Karen and David, as defendants.

About one month after the trial had started, four days of actual trial, husband filed his third amended property statement in which he asserted his grandchildren had an "interest" in six parcels of the real property he controlled. Subsequently, on September 17, 1986, the court, on its own motion, raised the question of whether the grandchildren were indispensable parties who must be joined in the action. After a discussion of this issue on the record, the

---

1. Periodically, in the opinion, we refer to some of the participants by their first names. No disrespect is intended. The personal reference is for clarity.

wife waived any interest she might have in those six parcels and the trial continued.

After "some 23 non-consecutive days of trial", some 250 exhibits and over 1900 pages of transcript, the case was submitted to the court. About seven months later, prior to a decree being entered, Mordechai, individually and as next friend of and on behalf of the grandchildren, filed a motion to intervene. The next day, husband, Karen and David filed a joint motion to declare a mistrial and to join Mordechai and the grandchildren (absentees) as parties. The court denied these motions and, subsequently, entered its decree of dissolution.

In its decree, the court expressly discredited husband and Karen.[2] The court found some of the real property controlled by husband had been owned by him prior to the marriage and was his separate property. The court found the remaining real and personal property to be marital property, and, of this marital property, the court awarded husband all the real property and some of the personal property for a combined value of about $2,000,000 and awarded wife personal property valued at about $1,000,000.

Appellants (husband, Karen and David) appeal the distribution of property, contending there was no marital property to distribute because the property in issue either belonged to third parties or was husband's separate property. Appellants also challenge the court's decision not to join absentees (Mordechai and the grandchildren) as parties, and challenge the award of attorney's fees to wife. Absentees contend the court erred in failing to join them as parties and in failing to appoint a guardian for the grandchildren. We affirm.

*Procedural Issue*

On appeal, absentees label themselves as "Proposed Intervenors." However, their Point and supporting arguments focus solely on compulsory joinder under Rule 52.04 rather than on mandatory or permissive intervention under rule 52.12. This labeling may be consistent with absentees' post-trial motion to intervene filed in and denied by the trial court. As we understand that motion, absentees contended they had an absolute right to intervene under Rule 52.-12 because the "interest" in the property they claimed required their joinder as parties under Rule 52.04.

The phrasing of Rule 52.12 parallels that of Rule 52.04, and the two Rules are entwined. This, however, does not imply that an "interest" for the purpose of one is precisely the same as for the other, and absentees, neither at trial nor on appeal, have attempted to interpret these Rules to show a contrary implication. We need not address this issue here, however, because the facts in this case show that, if absentees were required to be joined under Rule 52.04, they had the right to intervene, under Rule 52.12, if that right were timely asserted. Rule 52.12. We, therefore, address only the joinder issue. If absentees fail to prevail on that issue, they would also fail as "proposed intervenors."

Wife raises an additional procedural issue which must be resolved. Absentees, as noted, contend the court erred in failing to join them as "indispensable" parties under Rule 52.04. Appellants, as part of their appeal, adopt the absentees' Point and arguments relating to joinder.

Wife attacks the absentees' standing to raise the joinder issue and questions the propriety of appellants' adoption of that issue. Wife contends absentees must be

**2.** In its Findings of Fact, the court stated:
The Court placed scant reliance upon the testimony of . . . Karen Schwartz due to its lack of credibility and reliability, and placed even less reliance upon the testimony of [husband] for similar reasons. [Husband] acknowledged having made false statements under oath, having forged signatures, and having committed other acts of deception. Additional statements and acts of [husband], not expressly acknowledged by him as false or

fraudulent, can only be described generically as dishonest or untruthful. These conclusions of the Court are not the first occasion such behavior of [husband] has been judicially noted and similarly characterized. See: *Feinstein v. Cobur Corporation*, 721 S.W.2d 763, 765–66 (Mo.App.E.D.1986) (finding [husband's] "testimony as incredible," "unworthy of belief," and his documentary evidence as "patent chicanery").

confined to challenging the denial of their motion to intervene. Only an aggrieved party to an action may take an appeal, wife argues, and, since absentees were never parties to the action below, wife reasons, they may not appeal the court's failure to join them as parties but may only appeal the court's denial of their motion to intervene. Moreover, wife argues, absentees fail to specify the ruling or rulings of the trial court creating this error. These arguments are not persuasive.

■ None of the parties have cited us a case, Missouri or federal, in which a court specifically and expressly addresses the point whether an absentee at trial may raise nonjoinder for the first time on appeal. Rule 55.27(g) provides that the *defense* of failure to join an indispensable party may be raised for the first time on appeal, but the use of the term "defense", along with the other defenses listed in the Rule with nonjoinder, arguably, may indicate the Rule pertains solely to those who were parties at trial. Be that as it may, the failure to join absentees as indispensable parties certainly may be raised by either one or all of the appellants, all parties below, or by us *sua sponte. Neal v. Drennan*, 640 S.W.2d 132, 136[8] (Mo.App. 1982). Moreover, the issue of joining absentees was before the trial court during trial, and, if there is a failure to specify the ruling or rulings made by the trial court rejecting their joinder during trial, this failure is not fatal because the record makes it abundantly clear the trial court made a conscious choice not to join the absentees.

### Property In Issue

The property in which absentees claim an interest was, according to husband, derived from annual gifts husband made to them. Gifts, husband calculated in exhibits prepared for trial, which amounted to a total of $284,000.00 from 1970 to 1986.[3] The gifts, he said, were in the form of promissory notes, but, he said, he retained the actual funds and managed them. Husband calculated his investment of the funds in real estate and non-taxable securities resulted in sale proceeds, rents and interests aggregating, at the time of trial, to $571,075.86, which, he said, he held for absentees. Until the separation of Husband and Wife, the securities were maintained by husband in a joint account at A.G. Edwards bearing both Husband and Wife's names, but no other names. The court found the securities in this account to be marital property, and, as part of its distribution of marital property, the court specifically awarded wife some of the securities. It is absentees' claim of interest in these securities which is the basis of the compulsory joinder argued for by absentees and appellants.

### Joinder

Rule 52.04 governs whether this interest, as presented to the trial court, required absentees to be joined as parties. The application of the Rule by the trial court is a two step process. The court must first determine whether the absent person is needed for a just adjudication, and, if so, the absentee must be joined if feasible. Rule 52.04(a). If joinder is not feasible, the second part of Rule 52.04 comes into play. It provides the factors which must be considered by the court in deciding whether to proceed without the absentee or to dismiss the case. Rule 52.04(b).[4]

Rule 52.04(a) applies when nonjoinder would have any of the following effects. First, when it would prevent complete relief from being accorded to those who are

---

**3.** Husband testified that each year, he gave each absentee, on his birthday, a gift representing the maximum amount allowable as a tax free gift. Thus, through 1981, he said he gave each $3,000 annually, and, from 1982 on, he said he gave annual gifts of $10,000. Husband claimed to have given similar gifts to Karen and David.

**4.** The provisions of the Rule, it has been said, have eliminated need for the labels "necessary"

party and "indispensable" party, because the real purpose of the Rule is to bring before the court all persons whose joinder would be desirable for a just adjudication of the action. *See,* Wright, Miller & Kane, *Fed. Practice and Procedure,* Civil 2d § 1604. Nonetheless, the use of those labels persists. *E.g., Vanderson v. Vanderson,* 668 S.W.2d 167, 170[1] (Mo.App.1984).

parties, Rule 52.04(a)(1), or, second, when the absentee "claims an interest relating to the subject of the action" and is so situated that his absence may "as a practical matter impair or impede his ability to protect that interest", Rule 52.04(a)(2)(i), or will "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Rule 52.04(a)(2)(ii). The first joinder standard is designed to protect those who are already parties by requiring the presence of all persons who have an interest in the litigation so that relief may be complete. It also furthers society's interest in judicial economy. Rule 52.-04(a)(2)(i). The second standard relates to situations in which the action cannot be effectively adjudicated because the absentee claims an interest in the subject matter and disposing of the action in his absence may prejudice him or those already parties. Rule 52.04(a)(2)(i) and (ii).

Appellants and absentees contend that husband did not own the property in his control, rather, they argue, he managed it for Karen, David and absentees. Thus, they contend, they had an interest in the property in issue, and, because of this interest, the court's failure to join absentees violated each of the standards set by Rule 52.04(a). From our reading of the record, the trial court raised the issue of compulsory joinder of absentees during trial and implicitly concluded they were not parties required to be joined by Rule 52.04(a). On this record, we find nothing improper in this conclusion.

### Scope of Review

■ None of the parties expressly address the scope of our review of a decision made under Rule 52.04. This Rule, however, tracks Rule 19 Fed.R.Civ.P., and the provisions of these Rules require the trial court to reach decisions regarding compulsory joinder by balancing pragmatic considerations. *State ex rel. Emcasco Ins. Co. v. Rush,* 546 S.W.2d 188 (Mo.App.1977); Wright, Miller & Kane, *Fed. Practice and Procedure,* Civil 2d, § 1601. This balancing necessarily implies the use of discretion, and, thus, in the federal courts, the

standard of review in Rule 19 cases is abuse of discretion. *Bakia v. County of Los Angeles,* 687 F.2d 299, 301[4] (9th Cir. 1982). In Missouri, we implicitly use this same scope of review without expressly saying so. *E.g. Cochran v. Cochran,* 716 S.W.2d 275 (Mo.App.1986); *Vanderson v. Vanderson,* 668 S.W.2d 167 (Mo.App.1984); *Whitenton v. Whitenton,* 659 S.W.2d 542 (Mo.App.1983). We need not determine whether that scope of review is indeed correct. The only other scope of review which may be equally or more appropriate here is the scope defined in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Under either scope of review, appellants and absentees would not prevail.

### Joinder Under Rule 52.04(a)(1)

■ The first joinder standard, as noted, is designed to protect those who are already parties by requiring the presence of all persons who have an interest in the litigation so that any relief that may be awarded will be effective and complete. Since the trial court here had the statutory duty to make an equitable distribution of marital property, § 452.330 RSMo 1986, it could hardly fulfill that duty without first determining what property was marital. At trial, husband said absentees had an interest in the property in issue, and, therefore, pristine logic would dictate the joinder of absentees to determine the validity of their interest. But, as a practical and pragmatic matter, that is not necessarily the case. *See, e.g. Cochran, supra; Whitenton, supra.*

Wife filed her initial petition on December 12, 1984, and trial started on June 3, 1986. On July 8, 1986, husband filed his third amended property statement. It was husband's third attempt to explain his view of the status of the property in issue. This statement plus "certain [unspecified] testimony that had been elicited up to [date]" caused the court to raise the issue of joinder of possible "indispensable" parties on September 17, 1986. In that property statement, husband had listed six parcels of real estate in which his grandchildren had an interest. At that point in the trial,

the court believed "the claimed interest of the grandchildren are [sic] in the real estate properties only." When asked to respond to the court's understanding, trial counsel for appellants [5] said there was "additional evidence that the grandchildren's funds are invested in securities which is before the court", and, counsel said, he had "told the court that it is [his] opinion that the grandchildren ... are necessary parties and that ..., Mordecai [sic] ..., is also a necessary party." [6] Counsel moved "to terminate the trial and either dismiss the case or allow the re-filing of amended pleadings at an appropriate time, getting the correct parties in...." But counsel made it clear he would not ask to join absentees. He told the court it was not his but wife's obligation to join absentees, and he "neither can or should correct the error in [wife's] case...."

To us, this is a strange position to take for one who wants a determination of what property is marital and an equitable distribution of that property. Wife did indeed file a petition for dissolution. But, husband filed a cross-petition for dissolution and asked for a declaration that no marital property existed. Thus, the need for dissolution and the need for joinder, if real, were as critical to husband as it was to wife. And, even if husband had not filed a cross-petition, he, as well as the other appellants, had the opportunity to assure complete and equitable relief by simply joining the absentees, if they were necessary to a determination of what property was marital. Appellants made a conscious choice not to attempt to exercise their right to ask for joinder. Having made that conscious choice, they expressly relinquished a known right to ask for the joinder they now ask us to order, and, likewise, they expressly invited the error they now ask us

to cure. We find no reason in law or logic to grant appellants' standing to raise the joinder issue before us on the grounds provided in Rule 52.04(a)(1). Their belated written motion to declare a mistrial and to join absentees, filed seven months after the cause was submitted and ten months after the issue was first raised by the court, does not convince us otherwise.

Admittedly, that is not the complete answer. Rule 52.04(a) does requires the trial court to order joinder, if "complete relief cannot be accorded among those already parties" without joinder. Moreover, as we have noted, the issue of joinder may be raised by us *sua sponte*, and, for our purposes here, we have assumed that absentees may raise the issue for the first time on appeal. Nonetheless, we still find no reason in law or logic to resolve the issue, once raised, by setting aside the decree and granting a new trial. Not only appellants, but wife also, were afforded the opportunity to join those they believed necessary for complete relief among them. We have discussed appellants' choice. Wife took the position, at trial, that the only interest claimed or showed to be non-marital was the interest in the six parcels of real estate listed on husband's third amended property statement as belonging to the grandchildren. She waived her rights to that property. We see no greater reason to resolve the joinder issue differently when vicariously raised by others than when raised directly by appellants. Moreover, on the present record, society's interest in judicial economy does not compel any different resolution.

### *Joinder Under Rule 52.04(a)(2)*

The second standard under Rule 52.-04(a), as noted, relates to situations in which the action cannot be effectively adju-

---

**5.** Trial counsel for appellants is not their appellate counsel.

**6.** Apparently, there was confusion about the specific issue being discussed because shortly thereafter the following colloquy took place:

> Court: ....
> Is the Court correct in its understanding that you have made no mention in your position with respect to this aspect which we're dis-

> cussing before today that you've stated that in chambers, sir?
> [Counsel]: I've never addressed the Court on the subject before today. That is true. And I did so today only upon inquiry by the Court about the issue.
> I believe it has been disclosed to the Court by the contents of the property statements that are on file....

dicated because the absentee claims an interest in the subject matter and disposing of the action in his absence may prejudice him or those already parties. Rule 52.-04(a)(2). More specifically, as to the absentee, he must be joined if his absence may as a practical matter impair or impede his ability to protect his interest. Rule 52.-04(a)(2)(i). This standard has not been met.

To protect their asserted interest, absentees can trace the proceeds of the real estate previously sold by husband, sue husband or wife to prove their interest in that real estate and, then, claim the proceeds, as was suggested by the court in *Pirtle v. Pirtle*, 610 S.W.2d 317, 318 (Mo.App.1980).

▮ Absentees can also sue husband on the promissory notes he purportedly gave and then invested for them each year. The trial court is not obligated in a dissolution action to distribute the parties' debts, *Daniels v. Daniels*, 675 S.W.2d 29, 36[15] (Mo.App.1984). Thus, the failure of the court to address the potential debts created by the promissory notes here does not affect the court's distribution of the property or impair absentees' ability to sue husband and collect on those debts in a separate action.

Absentees could also sue husband for a breach of fiduciary duty based on husband's failure to keep absentees' property separate, his inability to trace their funds, and his decision to title the account containing the proceeds jointly in his and wife's names. Since, in exhibits prepared for trial, and appended to proposed intervenors' brief, husband "calculated" the gifts he had invested for absentees as having a combined worth of over half a million dollars, it is unlikely husband would be unable to satisfy a judgment from the two million dollars of property the court awarded him.

Thus, it is clear, that absentees can still sue; their burden to prove the property is theirs has not changed; nor has the ability of husband or wife to satisfy a judgment. Absentees, simply have not shown their interests were prejudiced by their nonjoinder.

The additional standard set by Rule 52.-04(a)(2) requires an absentee's joinder if his absence subjects any of the parties "to a substantial risk of incurring ... multiple or otherwise inconsistent obligations." Rule 52.04(a)(2)(ii). No detailed discussion is needed here to demonstrate this standard was not met. Simply stated, husband as well as wife made a conscious choice not to join absentees. Therefore, husband and wife have no reason to complain now if that choice now would subject them to multiple suits or inconsistent obligations.

Two additional matters raised by appellants and absentees must be addressed. The more important is their reliance on this Court's opinion in *Alvino v. Alvino*, 659 S.W.2d 266 (Mo.App.1983).

In *Alvino*, this Court reversed and remanded for a new trial, in part, because the husband's mother was not given a reasonable opportunity to litigate her interest in property the wife claimed was marital. Specifically, the wife claimed, and the trial court concluded, that money held solely in husband's mother's name was marital property. This conclusion was reached after a trial in which, on wife's motion, the mother was made a party after the trial had begun. After joining the mother, the court ordered a transcript to be prepared, an undertaking which took about five months. Upon receiving the transcript, the mother had approximately one month to finish preparing for trial. The bases of this Court's ruling were mother did not have a reasonable opportunity to prepare for trial and, perhaps more important to our case, husband and his mother did not have a common goal in the litigation. *Id.* at 268–270[1–2].

The differences between *Alvino* and the case at bar make it distinguishable: (1) In *Alvino* the alleged marital property was *titled solely* in the name of the mother; here none of the property is titled in absentees; it was all held jointly in husband's and wife's names. (2) The accounts in *Alvino* were identifiable; here absentees have not specified which securities in the jointly titled account they claim were purchased with their money for them. (3) Wife, a party to the dissolution in *Alvino*, joined the mother during trial, and the mother, again during trial, raised the issue

of her inability to adequately defend her interests; here the husband, the father-in-law of Mordechai and grandfather of the three minor absentees, and Karen, his wife and their mother respectively, were parties and made a conscious choice not to ask for joinder. And, Mordechai, who like husband and Karen now complains about failure to join him and his children and who we must assume knew of the litigation, made no attempt to seek intervention until seven months after the case was submitted to the trial court, ten months after the joinder issue was raised by the court and almost three years after wife filed her initial petition.

Additionally, we see nothing of substance which the absentees would have added to the litigation. The minor absentees argue that, if they had been parties, they "might have discovered . . . why [husband] apparently maintained custody of some promissory notes intended as gifts to the minors, why complete fiduciary tax returns were not filed on behalf of the minors and [why husband failed] to segregate investments made on behalf of the minors." These questions would have been answered, they argue, by their own discovery, their calling witnesses and their cross-examining the witnesses of husband and wife. The thrust of this argument, as we understand it, is that the minor grandchildren would prove husband's bizarre story through other sources. And, thus, their exercise of process would convert husband into a credible witness.

We have read the transcript and exhibits. Husband is the creative source of the minor absentees' asserted interests. He exercised "total, exclusive control over all" the assets in issue.[7] His testimony and exhibits, however, amount to nothing more than evasions, contradictions, opaque explanations and a consistent disregard of the intelligence of others. In short, he is unbelievable. To make believable his story of the creation and life of the minor absentees' interest by other means is speculative, to say the least. The legal sins of husband, Karen and Mordechai should not be visited on the minor absentees. Nonetheless, we see no real prejudice worked against any of the absentees by the failure to join them as parties.

The minor absentees also contend the court was required to exercise its inherent power and appoint a guardian ad litem for them. We disagree.

They argue that minors have special rights and their interests must be protected. Appointment of a guardian ad litem for the minor absentees may have been required if their status were in issue. Their interest in this suit, however, is un-

7. The court found and the record supports the finding that:

> [husband] exercised total, exclusive control over all current assets or previously existing assets claimed by [husband] and Defendants to be or to have been their property, whether owned legally or equitably, as evidenced by:
>
> (a) His exclusive decision making as to the purchase, sale, exchange and/or lease of said assets;
>
> (b) His total and exclusive control over and use of the assets and of the income produced by said assets;
>
> (c) His reporting of all income, capital gains, capital losses, depreciation, and charitable contributions of said assets on his personal income tax returns and/or his arbitrary assignment of certain income, capital gains, capital losses, depreciation, and charitable contributions to the tax returns of other family members of his for the purpose of decreasing their respective tax burdens, without any consistency or conformity to applicable tax laws;
>
> (d) His use of said assets and income for his personal benefit and expenses;
>
> (e) His failure to segregate any of said assets or their income, gains or losses between himself and Defendants;
>
> (f) His failure to maintain any records segregating his assets from any assets of Defendants;
>
> (g) His comingling [sic] at will of said assets and the income produced by said assets;
>
> (h) His failure to report to Defendants as to the status, value or progress of said assets;
>
> (i) His unilateral and arbitrary decisions as to the timing or amount of any distribution of assets or income to Defendants;
>
> (j) His unilateral and arbitrary decision as to the allocation of ownership between himself and Defendants; and,
>
> (k) His failure to file gift tax returns and fiduciary tax returns, as and when required by applicable tax laws.

related to their legal status as minors. The case law and statutes relied on by the minor absentees relate to the determination of paternity, custody, adoption and matters of testamentary disposition. *See, e.g. S. v. S.*, 595 S.W.2d 357 (Mo.App.1980); § 453.025, RSMo 1986; § 456.225.4, RSMo 1986. These issues have not been raised here.

### Characterization and Division of Property

Appellants contend that most of the property in issue did not "belong" to either husband or wife; rather, they argue, the property was what they call "non-spousal". This contention is based upon the testimony of husband and Karen that the bulk of the property controlled by husband "belonged to" Karen, David and absentees. Husband and Karen, however, were completely discredited by the trial court. The record supports this assessment. Thus, there was no credible evidence to support this contention.

Alternatively, appellants contend that, if the property is "spousal", it was husband's separate pre-marital property. This argument, likewise, is not persuasive.

■■■ In determining if property is marital or separate, we follow the "source of funds rule". *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825[8] (Mo. banc 1984). Under that rule, property is separate to the extent separate funds were used to acquire the property. *Id.* And, property acquired in exchange for separate property remains separate. § 452.330.2, RSMo 1986. However, "a portion of separate property will be considered marital property to the extent the increase in value of the separate property is brought about during the marriage by marital funds or efforts." *Winter v. Winter*, 712 S.W.2d 423, 426[2] (Mo.App.

1986). And, at the time of trial, the owner of the separate property can transmute that separate property into marital property. Transmutation can occur by the commingling of the separate property with marital property. *Cartwright v. Cartwright*, 707 S.W.2d 469, 472[4] (Mo.App. 1986).

■■■ The trial court set aside to husband as his separate property all property he had owned prior to the marriage which retained its original character. However, based upon the testimony and the exhibits, the court found the other "property over the years has been transmuted into marital property by reason of a continual comingling [sic] with marital assets and with marital earnings ... and/or by reason of such property having been placed into ... joint names...." [8] When, as here, the characterizations of property as marital or separate rests on an assessment of witness credibility, we defer to the trial court's determination of that credibility. *Harry v. Harry*, 745 S.W.2d 824, 825[1] (Mo.App. 1988) *Grommet v. Grommet*, 714 S.W.2d 747, 748[1] (Mo.App.1986); *Ware v. Ware*, 647 S.W.2d 582, 584[2] (Mo.App.1983). As previously noted, the court specifically found "the testimony of Respondent [husband] and ... Karen ... evasive and lacking credibility." Moreover, the court found the source of funds could not be traced and also found there was a commingling of marital and separate property; therefore, the court concluded the property in issue was marital. The record supports these findings and conclusions.

### Attorney's Fees

■■■ The court awarded wife's counsel $37,000 as attorney's fees. The award was only part of the court's valuation of $75,-000 in attorney's fees and $2,097.18 in costs

---

8. The court also found:
   Both [wife] and [husband], throughout the marriage, comingled [sic] any income received, whether by way of social security benefits, interest income, dividend income, rental income or otherwise, with the proceeds from the respective sales of their originally separate, non-marital assets for the purchase of different and new assets.

The trial court applied the law as expressed in *Cartwright, supra,* still effective during trial and on the date the decree was entered, September 28, 1987. House Bill 1272, *et al,* effective August 13, 1988, provides: Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property. § 452.330.4, RSMo 1988.

incurred by wife. Appellants contend the testimony of wife's counsel did not support the valuation of attorney's fees. Based upon their evaluation of that testimony, they calculate and evaluate attorney's fees to be, at most, $47,443.50. This figure should be lowered, they argue, because most of the services rendered by wife's counsel were caused by the claims of Karen, David and absentees to the property in issue.

Wife's counsel testified he intended to bill wife in excess of the $71,000 he requested the court to award him. He also testified to the average hourly award he received in the federal court as well as to his firm's normal charges for domestic work. This testimony, along with the difficulty of the issues and the intricacies of the facts, more than supports the court's award. *Frerichs v. Frerichs*, 704 S.W.2d 258, 263[11] (Mo.App.1986); *Flach v. Flach*, 645 S.W.2d 718, 722[9] (Mo.App. 1983). Moreover, courts, we have held, are experts on attorney's fees. *Frerichs, supra*, 704 at 263; *Flach, supra*, 645 at 722.

Appellants argue that most of the effort and time of wife's counsel were devoted to the third parties' claims of interest in the property; an issue, appellants contend, which was collateral to the dissolution itself. Therefore, appellants argue, most of the fees generated should not be paid for by husband. This free leap is not justified by law or logic.

By statute, the court is now required to determine what property before it is marital and to distribute that property equitably. § 452.330 RSMo 1986. Thus, the statute contemplates the resolutions of claims to property which may be marital. Moreover, husband was responsible for the commingling of separate and marital property, and he was one source of the contention that the property in issue was not only non-marital but "non-spousal". In effect, husband was responsible for wife's incurring legal fees to combat these assertions; assertions that went to the heart of this dissolution proceeding and were anything but collateral to the division of the marital estate. *See Smith v. Smith*, 724 S.W.2d

541, 544[3] (Mo.App.1986); *Brown v. Brown*, 609 S.W.2d 223, 228[12] (Mo.App. 1980). From our reading of the record, the $71,000 fee which wife's counsel requested from the trial court may well have been justified, and, thus, the court's award of $37,000 as attorney's fees is unquestionably deserved.

Wife's motions asserting procedural errors, taken with the case, are denied.

Judgment affirmed.

SMITH and STEPHAN, JJ., concur.