**Mikayla KING, Respondent,**

v.

**Mark KING, Appellant.**

**No. WD 54645.**

Missouri Court of Appeals,
Western District.

Sept. 15, 1998.

David R. Browning, Independence, for appellant.

J. Michael Murphy, Liberty, for respondent.

Before HANNA, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant Mark King appeals from the trial court's judgment entered April 29, 1997 finding an arrearage of unpaid child support in the amount of $68.60 due to the Respondent, Mikayla King Kieffer. Mr. King claims the trial court's finding of an arrearage of $68.60 was against the weight of the evidence and that the trial court failed to give him credit for all payments which the records of the Missouri Division of Child Support Enforcement (the Division) show he made. Finally, he asserts that the trial court erred in ordering the $68.60 be paid to Ms. Kieffer because all amounts due had been assigned to the Division, and it was the only proper party to sue for these amounts. Finding no error either in the trial court's determination that Mr. King owes $68.60, or in its determination that Ms. Kieffer had a standing to sue, we affirm.

## I. FACTUAL AND PROCEDURAL BACK-GROUND

During the time that Mark and Mikayla King Kieffer were married, she received Aid to Families with Dependent Children (AFDC payments) from the state to pay for necessaries for her children. When she received such benefits, and periodically thereafter, she signed documents assigning to the State any rights she might have to receive child support payments from her husband. The State obtained a judgment against Mr. King in 1981 for reimbursement of $943.00 in AFDC payments previously made by it to his spouse. The Clinton County Circuit Clerk was to collect this sum as trustee and send it to the State.

Mr. King's family continued to obtain AFDC in 1982 and 1983, and in 1983 the State again sued Mr. King for reimbursement of these AFDC payments. On May 11, 1983, the Circuit Court of Clinton County entered a consent decree in which the State agreed that Mr. King would pay it an additional $1,300.00 in reimbursement for AFDC paid to his family since the time of the 1981 judgment. Mr. King also agreed to pay his spouse $135.00 per month in support for the children in the future. Four months later, however, in August 1983, his spouse filed for dissolution of their marriage in Platte County, Missouri.

In October 1983, the Circuit Court of Platte County dissolved the Kings' marriage. At that point, the circuit courts of both Clinton and Platte Counties recognized that the portion of the May 1983 Clinton County consent decree requiring Mr. King to pay $135.00 per month in child support was supplanted by the child support provisions of the October 1983 Platte County dissolution decree. Mr. King's child support obligation in the Clinton County case was thus fixed as of the date of the Platte County dissolution decree in October 1983. At that point, the Clinton County Circuit Court had ordered Mr. King to pay a total of $2,918.00 ($943.00 under the 1981 judgment plus $1,300 under

the May 1983 consent decree plus five months of child support at $135.00 per month for May, June, July, August and September 1983). He had paid only $727.55 on these amounts, leaving a balance due in the Clinton County case of $2,190.45.

The Platte County dissolution decree, entered in October 1983, provided that Ms. (King) Kieffer would receive custody of the children and ordered Mr. King to pay $325.00 per month in child support. The Platte County Clerk was appointed as trustee for the collection and distribution of child support payments. Ms. Kieffer continued to receive AFDC payments until February 1985, and continued to assign her right to child support from Mr. King to the State in return for these AFDC payments. As Mr. King made child support payments through the Platte County Clerk, the Clerk turned them over to the State in reimbursement for its AFDC payments.

Mr. King was unemployed in 1984, and fell far behind in his payments due under the October 1983 Platte County dissolution decree. In January 1985, the Platte County court thus reduced the amount of child support he was required to pay to $205.00 per month, retroactive to November 1984. This meant that between October 1983 and January 1985 he should have paid $4,840.00 in child support under the Platte County dissolution decree (13 months at $325.00 per month plus 3 months at $205.00 per month). He had, in fact, paid only $83.00 to the Circuit Clerk of Platte County, but had also paid $496.00 to the Circuit Clerk of Clinton County, and $470.00 directly to Ms. Kieffer, for a total of payments of $1,049.00. The Platte County court gave Mr. King credit for these payments to Clinton County and direct to his former spouse. This still left a substantial arrearage, however.

On January 25, 1985, the Circuit Court of Platte County therefore entered a Judgment ordering the Platte County Clerk to correct the child support records of the court to reflect that as of January 15, 1985, Mr. King owed an arrearage of $3,791.00. The court further ordered Mr. King to pay support in the amount of $205.00 per month beginning on February 15, 1985, and each month thereafter.

Mr. King made numerous payments through the Platte County Clerk pursuant to the January 1985 decree. He also continued to make payments through the Clinton County Clerk until sometime in 1988. Mr. King also made some direct payments to Ms. Kieffer during this period. Ms. Kieffer did not receive AFDC benefits from February 1985 through March 1988, but she did again begin to receive AFDC benefits beginning in April 1988, and ending on May 31, 1990.

In June 1990, Mr. King received temporary custody of the children, and on December 13, 1990, the Platte County Circuit Court entered an order changing custody of the minor children to Mr. King, and the court thereafter terminated Mr. King's current obligation to pay child support. He has continued to have custody of the children and no additional support obligation has accrued since May 1990. This did not terminate his obligation to pay past due child support to Ms. Kieffer, or his obligation to reimburse the State for AFDC payments made prior to 1985 and from April 1988 through May 1990, however, since Ms. Kieffer had assigned her right to child support to the state to the extent of her AFDC benefits.

Mr. King remained behind in his payment of his child support arrearage, and Ms. Kieffer eventually filed a garnishment against Mr. King. In response, Mr. King filed a motion to determine arrearage on December 2, 1996. The Platte County Circuit Court held a hearing on April 17, 1997, to determine how much, if any, money was still due from Mr. King. The evidence consisted of the decrees and payment records of the circuit courts of Clinton and Platte Counties. The Court also heard the testimony of David Dean, a Child Support Enforcement Investigator for the Missouri Division of Child Support Enforcement (the Division), and considered the records of the Division.

The records of Platte County and of the Division agreed that, pursuant to the Platte County court's January 1985 order, as of that date Mr. King owed an arrearage of $3,791.00. The records also agree that the total amount of support accruing between

January 15, 1985 and May 31, 1990, was $13,120.00, which, when added to the arrearage, comes to a total of $16,911.00 owing from Mr. King under the Platte County dissolution decree.

The records of Platte County and the Division do not agree as to how much Mr. King has paid on this amount, and as to whether it incorporates the amounts due under the Clinton County judgments, however. The Division's records, as testified to by Mr. Dean, and as modified at the time of the hearing to show certain payments of which the Division was not previously aware, showed that Mr. King had paid a total of $19,088.85 either directly to his former spouse, to the Circuit Court of Platte County, or to the Circuit Court of Clinton County, since January 1985. If Mr. King was entitled to credit for all of these payments, this would mean that Mr. King had overpaid his child support obligation in the amount of $2,177.85. Mr. King says that this is the correct figure and is the one the court below should have adopted.

The court below did not accept Mr. Dean's figure, however. Instead, the court below determined that Mr. King had paid a total of only $16,842.40. It reached this figure by adding together the amounts Mr. King paid to his former spouse directly, the amounts which he paid through Platte County and the tax intercepts which were not reflected in the Platte County records but which the Division and the Clinton County records unequivocally show had been paid. (Apparently, these intercepts were, for unknown reasons, intercepted by the State and notice of them forwarded to Clinton County rather than to Platte County). The court did not consider any other Clinton County payments which had been made after January 1985 in determining the amount due under the Platte County decree. When the $16,842.40 paid into Platte County or intercepted by the State is subtracted from the total $16,911.00 which Mr. King should have paid under the Platte County decree before he took custody of the children in 1990, it leaves a total of $68.60 still owing in child support accrued prior to the change of custody. The court below thus found that "as of the date of the hearing in this cause that the respondent [Mr. King] owes $68.60 in unpaid child support to the petitioner [Mikayla King Kieffer]."

Mr. King appeals the judgment. Mr. King argues that the court erred in finding that he still owed $68.60 to Ms. Kieffer, for numerous reasons. First, Mr. King argues, we should be bound by the State's figures and that it was improper for the trial court to accept Platte County's figures and hold that $68.60 were due when the State's witness said that Mr. King has actually overpaid by $2,177.85. Second, Mr. King argues, the determination that he owed $68.60 was against the weight of the evidence, as the only evidence offered showed that he had in fact overpaid the amount due by $2,177.85. Finally, he claims that any monies due are owed to the State as reimbursement for past AFDC paid, and not to Ms. Kieffer. Thus, she has no standing to sue for any support arrearage. Only the State can do that and the State says that Mr. King has actually paid more than was due on the judgment. For the reasons discussed below, we reject all three claims.

## II. STANDARD OF REVIEW

∎ The trial court's decision in a court-tried case will not be disturbed on appeal unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's decision is presumed correct, and the appellant has the burden of showing error. *Kerr v. Jennings,* 886 S.W.2d 117, 123 (Mo. App.1994).

## III. MS. KIEFFER HAD A RIGHT TO SUE TO DETERMINE MR. KING'S SUPPORT OBLIGATION, AND THE COURT BELOW HAD A RIGHT TO DETERMINE THAT SUPPORT OBLIGATION BASED ON ALL OF THE EVIDENCE IN THE RECORD

∎ Mr. King also argues that the court's determination that $68.60 was due was against the weight of the evidence because the only evidence offered was that of Mr. Dean, who testified to the Division's figures.

Mr. King argues that we must accept the Division's figures showing he has fully paid child support since the Division of Child Support Enforcement is the entity that was owed the support once Ms. Kieffer had assigned her rights to support to it in return for her receipt of AFDC benefits. In effect, then, he is arguing that Ms. Kieffer has no standing to sue, only the Division does.

■ We take issue with Mr. King's argument that the Division, and through it the State, is the only entity with standing to sue for any amounts still owing by Mr. King. Mr. King's argument seems to be premised on the belief that Ms. Kieffer permanently and totally assigned all of her rights to child support to the State in return for AFDC benefits. This is not correct. She assigned those rights only up to the amount of AFDC benefits she received. She continued to have a right to receive any additional payments. *See In Re Marriage of Lathem,* 642 S.W.2d 694, 698–99 (Mo.App.1982).

Mr. Dean testified on behalf of the Division that as of September 23, 1996, the State still had $38.80 in unreimbursed AFDC benefits. However, his records also showed that Mr. King still owed substantially more than this amount in back child support. Moreover, the record shows that, after September 1996, Mr. King paid $282.00 in December 1996 and $1,237.08 in February 1997. This would have more than satisfied the $38.80 the Division witness said was still owing, but it did not satisfy the amount of child support claimed by Ms. Kieffer. Therefore, she had a right to sue for any remaining support. She has done so here.

Moreover, Mr. King's argument is based on the assumption that the Division's figures are correct. He does acknowledge that the Platte County records and the State's records were also in evidence, but states that "there was no testimony offered explaining any difference between the record of the Clerk of the Circuit Court of Platte County and the record of the Missouri Division of Child Support Enforcement." Therefore, he argues, since we cannot explain why the records differ from each other, we should just accept the State's figures.

■ This begs the question of why we should do so. Mr. King seems to think this result should follow from his argument that it was the State, not Ms. Kieffer, who had standing to sue, but we have rejected that argument. Even if this were not the case, the Division did not sign a stipulation as to the amounts due from Mr. King, and its witness, Mr. Dean, even modified his testimony at trial as to the amount due when alerted to various relevant payments. Moreover, the State is not a party to this action, and could not stipulate to any figure on behalf of Ms. Kieffer. Ms. Kieffer certainly did not stipulate that the Division's records were correct. The normal rule thus applied that the court was required to rule based on all of the evidence, and that this Court will affirm its judgment if that judgment was based on substantial evidence and was not against the weight of the evidence. *Murphy v. Carron,* 536 S.W.2d at 32. Neither this Court nor the court below could or should accept evidence simply because it is offered by one of the parties who have an interest in the judgment, even if that party is the State.

Finally, while Mr. King is correct that the testimony offered by Mr. Dean does not fully explain the difference in the figures determined to be due by the State and determined to be due by Platte County, we have reviewed the record as a whole. As discussed in the following section, we find that the record both explains why the Division of Child Support Enforcement's figures were different than those of Platte County and fully supports the trial court's determination that Mr. King still owes $68.60 to Ms. Kieffer.

## IV. THE TRIAL COURT CORRECTLY DETERMINED THAT MR. KING IS BEHIND IN CHILD SUPPORT PAYMENTS IN THE AMOUNT OF $68.60

■ Because Mr. King's principal argument on appeal is that we were required to accept the Division's child support payment figures, his Points Relied On and Argument only fleetingly address what amounts of child support the rest of the record shows Mr. King may still owe to Ms. Kieffer. Because this matter involves child support, however,

this Court has laboriously examined the testimony of Mr. Dean and the records offered below from the Division, Platte County, and Clinton County. Those records fully support the trial court's determination that Mr. King owed $68.60 in child support as of the date of the court's judgment. The records also explain the reason for the difference in the amounts shown paid by the Division's records and by Platte County's records.

More specifically, the Platte County records, as supplemented by evidence of tax intercepts and direct payments to Ms. Kieffer, are the basis of the trial court's finding that Mr. King owed $16,911.00 and had paid only $16,842.40, and that he thus still owed $68.60. Specifically, and quoting from the trial court's order below, these records showed:

As per the orders cited herein, the Court finds that for the following years the respondent [Mr. King] owed the stated amount in child support:

1985: February through December—$2,255.00

1986: $2,460.00

1987: $2,460.00

1988: $2,460.00

1989: $2,460.00

1990: January through May—$1,025.00

As per the child support collection's records of the Platte County Circuit Clerk's Office, which were judicially noticed by this Court, the Court finds that the respondent [Mr. King] paid or should be credited with the following amounts of child support:

1985: February through December—0

1986: 0

1987: $1,430.00

1988: $2,633.75

1989: $2,760.00

1990: $2,623.16 (this 1990 amount also reflects credit for respondent as a result of tax intercepts in the amount of $230.16 and $783.00)

1991: $1,498.20 (this 1991 amount also reflects credit for respondent as a result of tax intercepts in the amount of $709.00 and $49.00)

1992: $1,653.39

1993: 0

1994: 0

1995: 0

1996: December—$282.82

1997: February—$2,131.08

The respondent, Mark Steven King, was also credited for $1830.00 in direct payments to the petitioner as reflected by checks contained [in] the records of the Circuit Clerk of Platte County.

Totaling the above stated figures, the Court finds as of the date of the hearing in this cause that the respondent owes $68.60 in unpaid child support to the petitioner.

If the court below was correct that Mr. King had only paid $16,842.40 to Platte County, why, then, do the records of the Division of Child Support Enforcement show he has paid in $19,088.85, or $2,177.85 more than was in fact due in support payments? The reason is simple. As Mr. Dean testified, and as is confirmed by a notation in the records of the Division of Child Support Enforcement,[1] the Division believed that the Platte County court's determination in January 1985, that Mr. King owed an arrearage of $3,791.00 in child support, was intended to incorporate both the arrearage owed to Ms. Kieffer (and through her assignments to the Division) under the Platte County dissolution decree, and also Mr. King's remaining arrearage owed directly to the Division under its 1981 and 1983 Clinton County judgments against him for reimbursement of earlier AFDC payments in Clinton County.

This belief is reflected in how the Division recorded Mr. King's payments to Clinton and Platte Counties for the years 1985–1990, and in Mr. Dean's testimony on behalf of the Division at trial. He specifically testified that, because the Division believed the 1985 Platte County judgment determining that Mr. King had an arrearage of $3,791.00 con-

1. Thus, a record of the Division concerning the Platte County dissolution case, dated September 23, 1996, contains the notation, "Judicial arrear-age set at $3,791.00 (**incorporates arrearages due under [the Clinton County judgments in] Order # CV781–60DR**)" (emphasis added).

solidated all prior arrearages in either Platte or Clinton Counties, the Division credited all payments received after January 1985 from Mr. King to *both* the Clinton County and the Platte County cases. This means, for instance, that if Mr. King paid $48.00 through the Circuit Clerk of Clinton County, the Division subtracted $48.00 from the amount it showed was due in Clinton County and subtracted an additional $48.00 from the amount it showed was due in Platte County. The Platte County Clerk's records, of course, showed nothing about any payments made to the Clinton County Clerk and forwarded to the Division after January 1985, since Platte County did not in fact receive any of these payments. Neither was it aware that the Division's records showed those payments as reducing the amount of reimbursement to which it—that is, Platte County—was entitled.

So far as the record below shows, the Division was incorrect in its belief that the 1985 determination of arrearages in the Platte County case incorporated the amounts past due under the Clinton County judgments. Nowhere in the January 1985 order does the Platte County Circuit Court purport to consider how much was due on the Clinton County judgments against Mr. King and in favor of the Division, and nowhere does the decree state that its finding of an arrearage of $3,791.00 is intended to encompass any arrearage on the Clinton County judgments. The Division's erroneous belief to the contrary may have arisen from a parenthetical in the introductory portion of the Platte County judge's explanation of how he determined the arrearage to be $3,791.00 as of January 1985. That portion of his order stated:

A computation based upon the order below reflects the actual amount due from respondent to petitioner (**or as reimbursement to the State of Missouri for Aid to Families with Dependent Children payments**) as of January 15, 1985, except for such sums as may be paid between the date of this entry and January 15 [shows the following figures]:

(emphasis added). The emphasized portion of the order thus does indicate that the figure arrived at by the court reflects the amount due as reimbursement to the State for AFDC payments. However, it does not anywhere suggest that this includes amounts due for AFDC payments based on the Division's judgments against Mr. King in other cases, such as that in Clinton County; in context, it clearly was intended to include only reimbursement due for the periods covered by the dissolution decree. In fact, as the Division was a party to the Clinton County judgments, and as the dissolution action was only between Mr. King and Ms. Kieffer, and did not include the Division as a party, it does not appear the Platte County court would have had any authority to affect the amount of reimbursement to which the Division was entitled under the Clinton County judgments. It could only affect the rights of the parties to the dissolution action.

In any event, the remaining language of the January 1985 decree makes it clear that the Platte County court considered only the amounts due and paid under the Platte County dissolution decree, and did not even purport to affect the Division's judgment in Clinton County. As a whole, this portion of the January 1985 decree states:

A computation based upon the order below reflects the actual amount due from respondent to petitioner (or as reimbursement to the State of Missouri for Aid to Families with Dependent Children payments) as of January 15, 1985, except for such sums as may be paid between the date of this entry and January 15:

October 15, 1983, through
October 15, 1984—13 months
@ $325.00                                   $4,225.00

November 15, 1984, to
[January] 15, 1985,—3 months
@ $205.00                                     615.00

| | | |
|---|---:|---:|
| Gross | | $4,840.00 |
| | | |
| Less credits for payments: | | |
|     Circuit Clerk of Platte County | $ 83.00 | |
|     Circuit Clerk of Clinton County | 496.00 | |
| | | |
| Direct to petitioner | <u>470.00</u> | <u>$1,049.00</u> |
| | | |
| Net Due | | **$3,791.00** |

The amount thus set out, of course, is the exact amount then owing under the Platte County dissolution decree considered alone. Clearly, the court was not incorporating any Clinton County arrearage. The Division was thus erroneous in assuming that the $3,791.00 arrearage determined by the Platte County court in the dissolution action was intended to incorporate the prior Clinton County judgments received by the Division against Mr. King.

The Division nonetheless continued to erroneously deduct amounts paid on the Clinton County judgments from the amount its records showed was due on the Platte County decree until 1988, when Mr. King had fully paid the amount due on the Clinton County judgments. The amounts which the Division erroneously deducted twice in this manner were substantial. Thus, the Platte County records showed no payments by Mr. King in either 1985 or 1986, but the Division showed that Mr. King had paid Clinton County $692.00 in 1985 and $227.00 in 1986, and then proceeded to reduce both the Clinton and the Platte County arrearage by those amounts. Mr. King made no payments to either county in 1987. The Division gave Mr. King credit in both Clinton and Platte County for $70.00 paid Clinton County plus a $611.00 tax intercept received by the Division in 1988, yet it only sent notice of this intercept to Clinton County and it was attributable to that judgment, not to the dissolution decree. In 1989, the State again deducted a tax intercept of $646.00 from both the Clinton and Platte County judgments, instead of just from the Clinton County judgment.

The 1989 intercept paid off all amounts due on the Clinton County judgments, and in fact resulted in an overpayment of $230.16 on the amount due on that judgment. The Division therefore sent Platte County a notice that Mr. King had completed payment of his liability on the Clinton County judgments and that the $230.16 and any future payments should be credited to the Platte County judgment. It does not appear that the Platte County records did give Mr. King credit for this $230.16 of the 1989 tax intercept. As noted above, however, the court below noted this, and did give him credit for that overpayment in Clinton County, as well as for the direct payments and other tax intercepts which were, for one reason or another, not noted in the Platte County records.

The amounts erroneously double-credited by the Division in this manner totaled $2,246.00. When the Division records are corrected by subtracting this amount from the $19,088.85 which the Division's records erroneously show Mr. King had paid, the resulting amount is $16,842.00. This is exactly the amount which the trial court found that Mr. King has paid, and is exactly the amount which is shown by the corrected Platte County records. When this is subtracted from the $16,911.00 which Mr. King should have paid, a remainder is due of $68.60. This is exactly what the court below found. We therefore affirm the trial court's ruling that Ms. Kieffer was entitled to garnish Mr. King's account in this amount.

Judgment affirmed.

HANNA, P.J., and RIEDERER, J., concur.