Hayes M.C. McALLISTER,
Plaintiff–Appellant,

v.

Irma Lee McALLISTER, Respondent.

No. ED 80010.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 28, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2003.

Byron Cohen, Clayton, MO, for appellant.

Adrienne L. Schaffer–James, Clayton, MO, for respondent.

LAWRENCE E. MOONEY, Chief Judge.

Hayes McAllister, Husband, appeals the trial court's judgment dissolving his marriage to Irma Lee McAllister, Wife. Husband argues that the trial court erred in: (1) ending the trial at 5:00 p.m. after only one day of trial, and not affording him the opportunity to complete the cross-examination of Wife and to present rebuttal evidence; and (2) ordering the marital residence sold and the net proceeds divided equally, without providing him a credit for his premarital contribution. We affirm.

## BACKGROUND

Husband and Wife were married on July 30, 1997, and lived together until they separated on May 2, 2000. Husband filed a petition for dissolution, and Wife cross-petitioned, asking for maintenance and payment of her attorney's fees.

During the marriage, Husband and Wife lived together at a home on Partridge Run Drive. There is conflicting testimony as to when this house was purchased. Husband testified that the house was purchased before his marriage to Wife, but he also testified the purchase date was July 16, 1999, which is after their marriage. Wife testified that the house was purchased during the marriage, that they began to look for a house right after they were married, and that it took about 18 months to find the house. There is nothing in the record before this court, such as the deed, to clarify this conflicting testimony.

Husband testified that he made a down payment of between $23,000 and $25,000 on the purchase of the Partridge Run home. According to both Husband and Wife, this money came from the sale of a building on Grand Avenue that Husband had been awarded in his prior divorce. Wife helped to repair and clean the Grand property before it was sold, but made no monetary contribution towards the purchase of the Partridge Run home. The Partridge Run residence was deeded in Husband's name alone, and he was the only one indebted on the mortgage. Both parties acknowledge that Wife's name was not placed on the deed or the mortgage because of her poor credit history.

As set out in the settlement conference order, trial began the morning of March 14, 2001. This same order stated that the estimated length of trial was one day. Trial began, at 9:32 a.m., with the presentation of Husband's evidence. Husband took the stand to testify, and underwent extensive examination, including direct, cross, re-direct, re-cross, and further re-direct examination. After Husband rested, Wife then proceeded with the presentation of her evidence, first presenting the testimony of two witnesses, then recalling Husband, and finally taking the stand herself to testify.

During the cross-examination of Wife by Husband's counsel, at approximately 4:55 p.m., the court announced that five minutes were remaining. Counsel continued with his cross-examination. During this cross-examination, the court stated "[a]nd I'm going to have to interrupt at this point, although you haven't answered the question, because we are out of time. This case was set for one day. That's what you requested, and we have had one day of trial." The judge then ruled from the bench, granting the dissolution, and read his decision into the record. As part of this decision the Partridge Run residence was ordered sold, with the proceeds divided equally between Husband and Wife. At the conclusion of the court's ruling, the court inquired whether either side had any questions. Husband's counsel asked a question concerning Husband's obligation to continue paying the mortgage on the Partridge Run property. After the court's response, Husband's counsel stated he would "like to make a statement for the record," to which the court responded "[w]e are out of time, I'm sorry.... It would have had to be done prior to 5:00, but thank you very much for offering anyway."

The court entered its decree and judgment of dissolution of marriage on April 22, 2001. Husband now appeals.

## DISCUSSION

Our review of a judgment of dissolution is the same as for any court-tried action. *Shelton v. Shelton*, 29 S.W.3d 400, 402 (Mo.App. E.D.2000). We must affirm the judgment unless there is no substantial evidence to support the decision, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Mehra v. Mehra*, 819 S.W.2d 351, 352 (Mo. banc 1991); *Craig–Garner v. Garner*, 77 S.W.3d 34, 36 (Mo.App. E.D. 2002).

Under this standard, considerable deference is given to the evidentiary and factual evaluations of the trial court. *Friedman v. Friedman*, 965 S.W.2d 319, 322 (Mo.App. E.D.1998). We are bound by the trial court's factual findings if supported by substantial evidence. *Gibson v. Adams*, 946 S.W.2d 796, 800 (Mo.App. E.D.1997). And, any fact issue upon which no specific finding is made shall be considered as having been found in accordance with the result reached. Rule 73.01; *Russ v. Russ*, 39 S.W.3d 895, 898 (Mo.App. E.D. 2001). We accept as true the evidence and reasonable inferences therefrom favorable to the trial court's decision and disregard all contrary evidence and inferences. *Kell v. Kell*, 53 S.W.3d 203, 205 (Mo.App. E.D. 2001); *Mehra*, 819 S.W.2d at 352; *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App. E.D. 1983). We defer to the trial court where there is conflicting evidence, and will affirm the judgment even if there is evidence which would support a different conclusion. *Ware*, 647 S.W.2d at 584; *Kell*, 53 S.W.3d at 205.

We also defer to the trial court's determinations as to the credibility

of the witnesses. *Shelton,* 29 S.W.3d at 402. The trial court is in a better position than us to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles which are not revealed in a trial transcript. *Hileman v. Hileman,* 909 S.W.2d 675, 679 (Mo.App. E.D.1995). The trial court is free to accept or reject all, part, or none of the testimony of a witness. *McGowan v. McGowan,* 43 S.W.3d 857, 861 (Mo.App. E.D.2001); *See also Ware,* 647 S.W.2d at 584. And, it may disbelieve testimony even when it is uncontradicted. *Russ,* 39 S.W.3d at 898. "The trial judge has absolute discretion as to the credibility of witnesses and the weight of their testimony is a matter for the trial court, and its findings on witness credibility are never reviewable by the appellate court." *Milligan v. Helmstetter,* 15 S.W.3d 15, 24 (Mo.App. W.D.2000).

Finally, the trial court's decision in a court-tried case is presumed correct, and the appellant has the burden of showing error. *King v. King,* 976 S.W.2d 49, 52 (Mo.App. W.D.1998); *Wright v. Wright,* 1 S.W.3d 52, 57 (Mo.App. W.D. 1999). We will not reverse the trial court's judgment if there is no showing of prejudice as a result of that judgment. *Shields v. Shields,* 59 S.W.3d 658, 660 (Mo.App. S.D.2001) *citing to Boone v. Boone,* 637 S.W.2d 249, 251 (Mo.App. E.D.1982); *See also* Rule 84.13(b).

In his first point relied on, Husband alleges that "the trial court abused its discretion by ending the trial at 5:00 p.m. after only one day of trial and not affording husband the opportunity to complete the cross-examination of wife and to present rebuttal evidence."

We note at the outset that Husband's point relied on does not comply with Rule 84.04, setting forth the briefing requirements on appeal. Rule 84.04(d) requires that a point relied on shall (1) identify the challenged ruling, (2) concisely state the legal reasons for the claim of error, and (3) explain in summary fashion why the reasons support the claim of error. *Mello v. Williams,* 73 S.W.3d 681, 685 (Mo.App. E.D.2002). An insufficient point relied on preserves nothing for our review. *Id.* at 686; *D'Agostino v. D'Agostino,* 54 S.W.3d 191, 196–7 (Mo.App. W.D. 2001). Although Husband did identify the trial court's action that he is challenging on appeal, he did not state the legal reasons for his claim and in turn, did not explain why his legal reasons support his claim of reversible error. As such, his claim is not preserved for our review. However, despite Husband's failure to comply with Rule 84.04, we elect to decide this case on the merits, in light of the allegation regarding the court's conduct. *See Thummel v. King,* 570 S.W.2d 679, 690 (Mo.banc 1978); *Zumwalt v. Koreckij,* 24 S.W.3d 166, 171 (Mo.App. E.D.2000). We therefore will review Husband's allegation of error *ex gratia.*

We strongly disapprove of the trial court's abrupt termination of the trial. However, Husband has failed in his burden of showing prejudice, as he did not make a timely offer of proof, his claims lack specificity as to what evidence he would have presented if given additional time, and he has not provided us with an adequate record on appeal.

Husband complains that the trial court's actions precluded him from completing his cross-examination of Wife and from presenting rebuttal evidence. "[A] litigant who complains about the exclusion of evidence should invariably make an offer of proof, both to inform the trial court about the content of the proffered evidence and to allow an appellate court to assess the prejudicial effect of the exclusion." *B.J.D. v. L.A.D.,* 23 S.W.3d 793, 797 (Mo.

App. E.D.2000). Here, there was no offer of proof. We realize that the judge made it abundantly clear that he did not intend to sit beyond five o'clock. Yet, upon concluding his ruling, the judge did ask both counsel if there were any questions. Husband's counsel proceeded first with a question regarding Husband's responsibility for mortgage payments. After receiving clarification about this, counsel then stated he wished to make a "statement," which was denied by the court. We can only speculate whether this statement was going to constitute an offer of proof. Moreover, Husband's counsel neither objected, nor requested more time, when the five-minute warning was given. Based on the record before us, there is neither an objection to the court's action, nor an offer of proof to help us determine the prejudicial effect of the court's action.

Even if we looked past the failure to make an offer of proof, Husband's complaints lack sufficient detail to show how he was prejudiced by the court's action. Husband complains that he was precluded from continuing his cross-examination of wife. Yet, in his motion for new trial, Husband states only that if given the opportunity to continue his cross-examination, he would have asked Wife further about "her income and expenses set out in her financial statements, question[ed] her as to how and when the various items of property acquired by the parties had been obtained, and questioned her further regarding her request for maintenance." Husband is even less specific in his brief on appeal. Husband does not indicate what precisely about Wife's income and expenses, her items of property, or her request for maintenance he wished to examine. Nor did Husband specify how the additional cross-examination would have provided anything different than what had already been adduced by prior testimony. *See L.J.B. v. L.W.B.*, 921 S.W.2d 23, 27

(Mo.App. E.D.1996); *B.J.D.* 23 S.W.3d at 797. Without more specific information, we are unable to determine whether Husband was indeed prejudiced by the court's action.

Husband also complains that he was precluded from presenting two rebuttal witness—himself and Marla Brown. Although in his post-trial motion, Husband did submit his own affidavit, as well as one from Ms. Brown, setting out what they would have testified to, Husband fails to clearly establish how he was prejudiced by not being able to present this evidence. We have reviewed the proffered testimony of Husband and Ms. Brown, and fail to see how this information would have affected the outcome. Most of the information was cumulative evidence and improper rebuttal. Of course, at this point in the proceeding, the matter had been largely tried.

Husband's failure to clearly establish how he was prejudiced by the exclusion of evidence is compounded by the fact that he did not provide us with an adequate record on appeal. Husband complains that Wife introduced an amended Statement of Property and an amended Statement of Income and Expenses during her case in chief. Husband contends generally that since the information on these forms was so different from earlier statements, he needed further time for cross-examination. Despite the fact that both of these forms were received into evidence during trial, the record on appeal does not contain these exhibits. Nor has Husband filed any of the other exhibits, many of which involve financial or property matters. Rule 81.12(a) provides that the record on appeal "shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented...." It is the duty of an appellant to furnish a record containing all the evidence necessary for the appellate court to deter-

mine the questions on appeal. Rule 81.12(c); *See Coyne v. Coyne,* 17 S.W.3d 904, 906 (Mo.App. E.D.2000); *In re Marriage of Britton,* 970 S.W.2d 389, 391 (Mo. App. S.D.1998). It is impossible for this court to assess Husband's claim of error and to properly assess prejudice when Husband has failed to include pertinent exhibits in the record on appeal.

Cross-examination is important. And, we freely acknowledge that it may be difficult to formulate an offer of proof when the abrupt restriction of cross-examination forecloses a party from discovering the very evidence that must be included in the offer of proof. Because of the conundrum this presents, we are inclined to show more liberality in assessing an offer of proof. But, unless it is evident that an offer will not be permitted, we are unwilling to excuse its complete absence. Moreover, Husband uttered no protest about the restriction of cross-examination for 67 days, until the filing of his motion for new trial. Therefore, given the multiple shortcomings of Husband's claim on appeal, he has not satisfied his burden to show prejudice. And, in the absence of prejudice, there is no reversible error. *L.J.B.,* 921 S.W.2d at 27. Husband's first point is denied.

In his second point, Husband alleges the trial court abused its discretion in ordering the Partridge Run residence sold and the net proceeds divided equally, without providing him a credit for his premarital contribution. Specifically, Husband contends that he made a $23,000–25,000 down payment on this residence, that this money came from the sale of a building owned by him from a prior marriage, and that the court erred in not awarding a setoff for this non-marital contribution.

In a dissolution proceeding, the court is required to determine what property before it is separate and what is marital, set apart to each spouse each spouse's non-marital property, and divide the marital property as it deems just. Section 452.330 RSMo.2000; *Beckham v. Beckham,* 41 S.W.3d 908, 912 (Mo.App. W.D.2001). A trial court possesses broad discretion in identifying marital property. *Absher v. Absher,* 841 S.W.2d 293, 294 (Mo.App. E.D.1992).

In determining if property is marital or separate, courts follow the "source of funds rule." *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 825 (Mo. banc 1984); *Feinstein v. Feinstein,* 778 S.W.2d 253, 261 (Mo.App. E.D.1989). Under that rule, property is separate to the extent separate funds were used to acquire the property. *Id.* Thus, a spouse contributing non-marital property to the purchase of new property, such as the marital residence here, is "entitled to an interest in the property in the ratio of the [spouse's] nonmarital investment to the total nonmarital and marital investment in the property." *Brooks v. Brooks,* 911 S.W.2d 631, 633 (Mo.App. E.D.1995); *In re Marriage of Herr,* 705 S.W.2d 619, 624 (Mo.App. S.D.1986). However, the "source of funds" rule does not abolish the theory of "transmutation," which allows a spouse by agreement, either express or implied, or by gift, to transmute an item of non-marital property into marital property. *Woolridge v. Woolridge,* 915 S.W.2d 372, 376 (Mo.App. W.D.1996). Accordingly, "[n]on-marital property may lose its character as such if there is evidence of an intent to contribute the property to the community." *Cuda v. Cuda,* 906 S.W.2d 757, 759 (Mo.App. W.D. 1995).

Here, Husband's position is that the sum of money used as a down payment was his separate property. However, the court found that any alleged separate property had either been gifted or was so comingled or transmuted as to make it marital prop-

erty. Though this sum of money, which Husband claims to be separate property, may have been used to buy the Partridge Run house, viewing the evidence in the light most favorable to the trial court's decision, there is enough evidence to support a finding that this sum of money had been gifted. There is evidence that Husband was buying the house for his wife. There is no dispute that this house was used as the marital residence. Wife testified that when Husband told her he was buying a home, he said everything was hers. She further testified that Husband told her that he was buying a house for her because he wanted to do everything for her. And, that with everything Husband bought her, he said "I'm buying this for you." From this testimony, the court could have found that the money used as a down payment had been gifted and transmuted into marital property.

■ Further, though Husband claims that the sum of money used as a down payment was his separate property, the court found that Husband's testimony regarding his claims of separate property was "wholly and completely devoid of credibility." In determining the character of the property before it, the court found that since neither Husband nor Wife's testimony was credible, it had an insufficient basis to determine what property was marital and what property was separate, and that therefore, all property was deemed marital property. "When ... the characterizations of property as marital or separate rests on an assessment of witness credibility, we defer to the trial court's determination of that credibility." *Feinstein*, 778 S.W.2d at 261. We give such deference here. .

As the court found that any alleged separate property had been transmuted into marital property, Husband did not have a non-marital interest in the Partridge Run residence, and thus was not entitled to a setoff. As there is evidence to support the court's finding, and no error of law appears, we must affirm. Husband's second point is denied.

The judgment is affirmed.

LAWRENCE G. CRAHAN, J., concurs.

CHARLES B. BLACKMAR, SR. J., dissents in separate opinion.

CHARLES B. BLACKMAR, Senior Judge, dissenting.

After careful reflection I feel that I must dissent. I am in my 55th year as a member of the Missouri Bar. In all those years I have never seen, in any court, Federal or state, the abrupt termination of proper examination by the imposition of a time limit. The trial judge so departed from prevailing standards of judicial procedure and fundamental fairness that a full retrial before another judge is required.

Although the majority did not base its holding on the inadequacy of the appellant's statement of the point relied on, I perceive no fault in the point as stated, and see no basis for criticism of counsel. I have no difficulty in seeing what counsel is complaining about. He was not allowed to complete his cross-examination. The legal error is obvious and requires no citation. I am impatient with unnecessarily close scrutiny of points relied on by appellate panels. I find the lengthy, rambling points employed by lawyers in attempting to satisfy judges less than helpful.

Nor am I persuaded that the error was harmless. The majority appropriately states that we are obliged to defer to the trial judge's credibility calls, but this judge has not heard the whole case! This is especially so as to the appellant's second point, in which the court holds that the wife has established an oral gift of the

parties' home to her when title was in the husband's name before the marriage. I shall not comment on the merits of the second point except to say that I find the wife's evidence of a gift less than overwhelming and am unwilling to accept the trial court's credibility call in the absence of cross-examination.

The majority properly recognizes the difficulty in presenting an offer of proof as to cross-examination which has not been allowed to proceed. There is no substitute for a quick response to direct examination. As many lawyers have learned to their dismay, the examinee may blurt out a devastating answer which will affect the trial of the whole case. When there is fundamental error of the magnitude here demonstrated, counsel should not be required to prove that the error was not harmless.

Busy judges understandably try to move their heavy caseloads, but they must operate within the established framework. This case did not involve a rambling or repetitious cross-examination. Counsel was allowed only a few minutes. In a case involving substantial issues of credibility, we should send an unequivocal message to trial judges.

I would reverse the judgment and remand the case for retrial before another judge.