**In re the Marriage of Deanna J. NOEL, Petitioner–Respondent,**

**v.**

**Robert A. NOEL, Jr., Respondent–Appellant.**

**No. SD 28876.**

Missouri Court of Appeals, Southern District, Division Two.

March 5, 2009.

Lawrence G. Gillespie, Clayton, for Appellant.

J. Matthew Miller, Springfield, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Robert A. Noel, Jr. ("Husband") and Deanna J. Noel ("Wife") were married No-

vember 11, 1995; the marriage produced three children, who at the time of dissolution were ages eleven, seven, and three-years-old. The parties initially separated in 2002, reunited, and finally separated in 2005. The trial court divided the marital property, granted Wife sole legal and physical custody and awarded supervised visitation to Husband, ordered Husband to pay a lump sum of $24,313.13 (consisting of various debts), and ordered Husband to pay $300.00 per month in maintenance to Wife and $1,574.00 per month in child support.

## Facts

Husband has a degree in journalism and, early in the marriage, he worked for a newspaper doing advertising and sales. He also had what was described as a Stockbrokers Series 7 license and did some stock brokerage work. During the first half of 2002, when the couple was living in Florida, Husband made $125.00 an hour teaching continuing education courses in computers; at times, this earned him approximately $2,000.00 per week. During 2002, the couple separated for a short time and Wife relocated to Missouri. Husband stopped teaching the continuing education computer courses in May 2002, moved to Missouri, and eventually reunited with Wife. Husband's tax returns for 2002, 2003, and 2004 were admitted at trial. Husband earned $57,533.00[1] in 2002, $43,711.00 in 2003, and $21,451.00 in 2004.[2]

At the time of separation in 2005, Husband was self-employed, but his business eventually suffered a downturn. On December 22, 2005, the trial court entered a Temporary Custody Order, which also ordered Husband to pay child support. From December 2005 to August 2006, Husband should have paid Wife a total of $8,045.46 in support. Husband, however, only paid Wife $3,000.00 from December 2005 to August 2006 and was, therefore, $5,045.00 in arrears. During the time that Husband was accruing the $5,045.00 arrearage, he promised Wife that if she executed title to a BMW vehicle to Husband, he would pay her $1,500.00. Although Wife did execute that title, Husband never paid Wife the $1,500.00. Instead, he sold the vehicle and paid a $3,000.00 payment on his credit card.

## Procedural History

As a result of Husband's failure to pay the ordered support, Wife filed a Motion for Temporary Child Support. The court held a temporary hearing in September of 2006; at that time, Husband's attorney submitted to the court a Form 14 Worksheet that listed Husband's monthly income as $3,100.00. He claimed he was working approximately ten to fifteen hours of billable time and ten to fifteen hours of non-billable time per week. According to Husband, the $3,100.00 figure submitted to the court was an estimation of what he thought he would be able to make, not what he was actually making.

The court then entered an Order for Temporary Child Support, consistent with Husband's testimony that he could earn $3,100.00 per month, which required Husband to pay to Wife $1,040.00 per month beginning September 1, 2006. Additionally, Husband was ordered to pay to Wife $1,000.00 on October 1, 2006, and $1,000.00

---

1. Of that money, $17,000.00 was actually a dividend from some type of 401(k) and not earned income.

2. The record before us only includes the 2002 tax information for Husband. Although the record on appeal does not include the 2003 and 2004 income tax information, Husband provided it in his brief and Wife did not dispute the information.

on November 1, 2006, as partial repayment of the $5,045.00 arrearage. The court also ordered Husband to pay the remaining $3,045.00 of the arrearage at a time and on a schedule to be addressed by the court at the time of trial. Wife filed a Motion to Compel Child Support Payments in December 2006 because, despite the order, Husband only paid one of the two $1,000.00 partial repayments, but did make monthly support payments for September, October, November and December 2006.

Not only did Husband fail to completely comply with the child support orders, he also failed to comply with discovery requests. Mother was forced to file a Motion to Compel discovery in August 2006, which the trial court sustained, compelling Husband to comply with discovery and to answer Wife's First Interrogatories and First Request for Production of Documents. Husband did not do so. Wife filed a Motion for Sanctions in October 2006.

During a deposition in November 2006, the parties reached a settlement agreement. Husband's lawyer sent a letter to the trial court informing the court that the case had been settled in order to have the case removed from the trial docket. The parties lost their trial setting. After the supposed settlement, however, Husband demanded that additional terms regarding the children be included in the settlement. Consequently, Wife filed a Motion for Reinstatement to the trial docket and the case was again set for trial.

Wife filed an Amended Motion to Compel Child Support Payments in March 2007. The parties stipulated that Husband was in arrears for child support for the months of February and March 2007, and he was ordered to make his payments through the Family Support Payment Center. When asked during a deposition in March 2007 when he was going to apply to employers for a job, Husband responded, "When I want to."

## Temporary Hearing

In April 2007, Wife filed another Motion to Compel Child Support Payments. A hearing on the motion was set for June 6, 2007. One day before the scheduled hearing on the motion, the trial court received a faxed communication from Husband which stated he could not attend the hearing because of his new employment in St. Louis. Wife filed a Second Amended Motion to Compel Child Support Payments and Motion for Sanctions on June 6, 2007, and a hearing on the motion was held on June 14, 2007.

At the hearing, Wife requested sanctions against Husband, which included striking Husband's pleadings and not allowing him to put on evidence. Wife testified that she received payments from Husband only for September, October, November, and December 2006, and received only $1,000.00 toward the arrearage. At the time of the hearing, Husband owed Wife $9,265.00, as a result of missed payments from February 2007 to the time of the hearing in June 2007 and from the previous arrearage.

At the hearing on Wife's motions, the court only allowed evidence addressing the issue of Husband's ability to pay. Husband testified about his college degree and his experiences in stockbrokerage work and teaching continuing education computer courses. He testified that he had been self-employed up until "the last couple months" before the hearing, but his business had suffered a significant downturn. From January to mid-April 2007, he had been trying to sustain his business but had to move to St. Louis and gained employment there. Husband also admitted to making the $3,000.00 credit card payment during the time that he was accruing the child support arrearage of over $5,000.00.

Husband attempted to discuss some medical problems which he had that limited his employment but claimed he worked for Express Scripts, a mail-order pharmaceutical company in Maryland Heights, Missouri.

The trial court found that the evidence did not support Husband's inability to comply with the court's order requiring him to pay child support. The court sustained Wife's motion for sanctions and ordered Husband's pleadings to be stricken. The court informed Husband that if he felt he made a sufficient payment on the arrearage by July 13, 2007, he could move to reinstate the pleadings and the court would consider the request.

### Trial

The trial for the dissolution was scheduled for July 24, 2007. Prior to the commencement of the trial, the attorney for Wife reminded the court that the pleadings had been stricken and requested that he be allowed to proceed with his case and "that [Husband] be prohibited from submitting evidence." Husband's attorney had filed a motion to reinstate Husband's pleadings [3] and asked that Husband at least be permitted to provide testimony related to his inability to make the payments that related to his pleadings being stricken. The court responded:

> I'll hear some brief testimony, not as far as the trial, but just with regard to his—if he wants to present some brief testimony regarding his ability to comply. I think we really already visited that issue a time or two. In fact—frankly, I'll just hear your—your argument or what—you can tell me what you think [Husband] would testify to.
>
> If based on that [Wife's attorney] or [the GAL] has some questions for [Hus-

band], we'll put him under oath. But in the interest of time, why don't you just state what you believe [Husband] would testify to regarding his ability to pay.

Husband's attorney stated that since March 2006 Husband had paid a total of $9,660.00 in child support to Wife. He further claimed Husband would testify regarding his income, which was presently $2,500.00 gross income per month, and regarding the reason that he did not have any income for a period of time because of his personal business failing.

The trial court indicated that on July 19, 2007, Husband appeared before the court and indicated that he had a check for $5,000.00 that he was going to tender to Wife if the court would reinstate his pleadings. The court stated on the record that it told Husband that the court would not negotiate with Husband. Husband's attorney said that check was possibly postdated because Husband anticipated receiving a $5,000.00 payment from a client and stated that the check Husband wrote to him for his attorney's fees bounced. As of the morning of trial, Husband had not tendered the $5,000.00 check to Wife, and the court denied Husband's motion to reinstate his pleadings.

After denying the motion to reinstate the pleadings, the court addressed the motion for sanctions that Husband filed against Wife:

> As for the motion for sanctions that was filed on this date, we're here for trial. I'm not inclined to hear a lot of evidence that doesn't relate to the trial. If you think there's been something occurring during the—during the course of this litigation that—with regard to how the case has been—well, with regard to [Wife's] conduct and so forth, I'm sure I'll hear it as—well, I'm not going to

---

**3.** Prior to trial, Husband had filed two pro se motions for reinstatement of pleadings.

hear it, I suppose, if I've struck pleadings, but I—I—I'm just not inclined to hear a motion for sanctions filed moments before—moments before the trial.

We're going to let [Wife's attorney] present evidence. Since we got counsel, I am going to be inclined to let you, [Husband's attorney], cross-examine to a certain extent. We'll see how that goes. All right.

Husband's attorney stated: "I don't know if this will be applicable in this case, because my understanding is that there will only be one witness, but I'd like to invoke the witness exclusion rule." Wife was called as a witness and testified about her education and employment history, including a potential job she had interviewed for recently. Although she was unemployed, she included child care costs, uninsured medical costs, and insurance costs in her Form 14. The court subsequently added those costs to the Form 14.[4] Wife also submitted an Income and Expense Statement to the court and testified about Husband's education and employment history, outstanding debts, and support payments received from Husband.

Wife further testified that Husband was physically abusive towards Wife; she stated there were times that he would scream, yell, and throw things at her. A photo of a bruise caused by Husband was admitted into evidence. Wife testified that she filed for an order of protection early in the case, and Husband signed an order agreeing that he would not stalk or threaten Wife if she dismissed the order of protection. Wife, however, had to file another order of protection when Husband continued to stalk and call Wife, and the order was entered by the court.

Evidence of Husband's behavior toward the children was entered. Husband had "irrational" phone calls with the children and a transcript of one of the calls was admitted into evidence. Wife testified that in the spring of 2002, she went to pick up her daughter after a visitation with Husband in St. Louis and he would not return daughter to her custody. Police surrounded the house where Husband was holding daughter in an unfinished basement all day. Daughter was forced to use a trash can as a toilet at one point during the ordeal.

The guardian ad litem ("GAL") also cross-examined Wife. He asked her about her problem with alcohol. Wife testified that she had stopped drinking as of January 2007, attends Alcoholics Anonymous ("AA") meetings seven to ten times per week, has a sponsor, and considers maintaining sobriety very important for her children.

The GAL testified that both parties were difficult and inappropriate at times with their conduct. He had to get involved in numerous occasions when both parties were holding the children in violation of court orders. He stated that the children want to see their father. He stated they enjoy their time with him after the quizzing session ends. He expressed his specific concern that Husband begins his visits with the children by quizzing them about "the conduct of their mother, where she's been, who's been at the house, what time these people leave, whether certain significant others are present at the home, when they're present, when they leave, whether she's been drinking again, things of this nature."

The GAL further stated the parents could not co-parent at that time and rec-

4. In its findings, the court indicated Wife could earn $1,200.00 per month, but it then imputed $1,560.00 to Wife for her income.

ommended that Wife be awarded sole custody. He did not think Husband was ready for unsupervised visits at that time, not because of a concern for the children's physical health, but because he was concerned for their emotional health. On cross-examination, the GAL admitted that the day before the trial he was ready to recommend unsupervised visits between the children and their father. He further admitted that Husband had not been given the opportunity to prove his ability to "behave" since March 2007 because he had been denied visitation. The GAL said Husband could have proven he had changed his behavior by paying support.

## Point Relied On

Husband's first point claims that the trial court abused its discretion by striking his pleadings, preventing him from presenting evidence, and limiting cross-examination of Wife because Husband's arrearage with regard to child support *pendente lite* does not support a sanction which prevents Husband from defending Wife's action. Husband further argues that the court's affirmative duty to assess the best interests of the children in its determination as to custody and support was hampered by precluding presentation of evidence. We reluctantly agree.

The decision to strike pleadings in a dissolution case for the nonpayment of temporary child support is certainly troubling. *Richman v. Richman*, 350 S.W.2d 733 (Mo.1961), is the seminal case regarding the striking of pleadings for the failure to pay *pendente lite* child support. In *Richman*, the husband paid only a small portion of the court-ordered *pendente lite* child support and attorney's fees. *Id.* at 733. The wife filed a motion to strike the husband's answer because he had failed to pay the child support and attorney's fees and had filed his answer without leave.

*Id.* The court ordered the answer stricken, heard the wife's evidence, and entered a default judgment in favor of the wife. On appeal, the Supreme Court noted the *McMakin v. McMakin*, 68 Mo.App. 57 (Mo.App.K.C.D.1896), case:

Therein it was held that the failure of the defendant to discharge a judgment for alimony pendente lite did not authorize the striking of his answer. The court relied upon the decisions from a number of other states and appeared to stress the interest of the public in divorce actions, saying that "unless the defendant is permitted to plead his defense, and offer proof thereof, how can the conscience of the court be satisfied of the justice of the plaintiff's complaint? The defendant's answer and evidence may call to the court's attention a state of facts that would show that to grant the plaintiff a divorce would be not only *contra bonos mores*, but a subversion of the rights of third parties not before the court. * * * If the defendant has property which can be taken in execution in satisfaction of the judgment, the plaintiff has only to cause the writ to issue for that purpose, but whether he has or has not such property, we are not of the opinion that a failure on his part to discharge the judgment, authorizes the court to strike out his answer * * *."

[*McMakin v. McMakin*], 68 Mo.App. [at] 62, 63. While we are in full accord with the opinion in the McMakin case we think an additional and more fundamental reason for the result therein was that the striking of defendant's answer constituted a denial of "due process" as guaranteed by the state and federal constitutions.

*Richman*, 350 S.W.2d at 734. Thus, the striking of the answer was a denial of due process; however, it was noted that "the situation where payment is made a condition to the granting of affirmative relief

and one where it is made a prerequisite to the right to defend are quite clearly distinguishable." *Id.* at 735. The case was remanded for trial on the issues. *Id.*

In this case, the issue is whether Husband was denied the right to defend as opposed to being denied the right to affirmative relief. *Richman* does not clarify the boundaries between the seeking of affirmative relief and defending an action in a dissolution case. Husband complains that the trial court prevented him from presenting evidence; however, Husband did not attempt to call any witnesses as he argues it would have been a futile effort given the trial court's rulings.[5] Was Husband allowed to defend this action when he was given only the opportunity to cross-examine Wife and the GAL? We think not.

Although we cannot differentiate between the seeking of affirmative relief and defending an action in this dissolution case and although we have empathy for a trial court faced with a person who evidenced disregard for the judicial process, not only in the failure to pay temporary support, but in the refusal to cooperate with discovery requests, we cannot countenance a process in this contested dissolution case in which Husband was denied the opportunity to present evidence in two crucial areas.[6] The court heard meager evidence concerning Husband's relationship with the children other than an incident that had occurred in 2002. Furthermore, the court had no evidence of Husband's current financial situation. Had the court heard evidence from Husband, it would have been free to disregard such testimony, however, we are troubled by the limited evidence before the trial court on the custody and financial support issues.

Husband has challenged the trial court's award of sole legal and physical custody to Wife with supervised visitation for Husband. Although we give greater deference to the trial court when reviewing child custody cases than we give when reviewing other cases, *In re C.N.H,* 998 S.W.2d 553, 557 (Mo.App. S.D.1999), when the GAL gives a reluctant endorsement to Wife as the custodian and Husband is given only supervised visitation, we believe the trial court erred in striking Husband's pleadings and not allowing Husband the opportunity to present evidence on the issues of custody and visitation. To allow the custody decision to be made on the partial basis of the nonpayment of temporary child support was an abuse of discretion.

Husband also challenges the child support award as unsupported by substantial evidence. Again, because his pleadings were stricken, we have insufficient evidence to review the child support award. The only time Husband showed an income anywhere similar to the child support award was in 2002, and even that income included dividend income which no one claims is now available. Because the court must address the appropriate income for the parties, the maintenance award also cannot stand. Husband did not challenge

---

5. Husband offered only one exhibit, a document with the attached records affidavit supplied by the business manager of Kinder Care. Wife's counsel objected to this exhibit on the bases that (1) it would be submitting evidence on Husband's behalf and (2) it was not produced in discovery. The court sustained the objection but did not give a reason for doing so; it very well may have been because the document was not produced in discovery.

6. It is clear from the statements of Wife's counsel, which were not contradicted by the court, and Husband's attorney's statements at the beginning of the trial, as well as the court's rulings, that the court would not allow Husband to present any evidence on his behalf.

the property division; that portion of the judgment is affirmed.

The provisions of the judgment relating to the issues of child custody, visitation, maintenance, and child support are reversed and remanded for further proceedings. The judgment is otherwise affirmed.

PARRISH, J., concurs.

BURRELL, P.J., dissents in separate opinion.

DON E. BURRELL, Presiding Judge, dissenting.

I respectfully dissent. I do so *not* to commend the practice of striking a party's pleadings for failure to comply with *pendente lite* child support orders. As pointed out by the majority, in a dissolution of marriage case involving children, the line between defending a claim and seeking affirmative relief is a fine one, and a judge who strikes pleadings in this context is certainly asking for trouble. On the other hand, a party who chooses to obstruct the trial court's lawful orders at every turn and continually thumbs his nose at the very judicial process he now seeks to benefit from should not be allowed to do so absent a very compelling reason.[1]

That being said, my disagreement with the majority in this case has to do with my belief that Husband has failed to demonstrate that he suffered any prejudice from the striking of his pleadings and the resulting inability to call his own witnesses. "[T]he trial court's decision in a court-tried case is presumed correct, and the appellant has the burden of showing error. We

will not reverse the trial court's judgment if there is no showing of prejudice as a result of that judgment." *Shields v. Shields,* 59 S.W.3d 658, 660 (Mo.App. S.D. 2001) (internal citations omitted); *See also* Rule 84.13(b).[2]

In *McAllister v. McAllister,* 101 S.W.3d 287 (Mo.App. E.D.2003), a dissolution of marriage case scheduled for a one-day trial, the trial court abruptly ended the trial at 5:00 p.m. after a five-minute warning that it would do so. At 5:00 p.m., the wife was on the witness stand and the husband's counsel was cross-examining her when the trial court stated "[a]nd I'm going to have to interrupt at this point, although you haven't answered the question, because we are out of time. This case was set for one day. That's what you requested, and we have had one day of trial." *Id.* at 290. The trial judge then ruled the case from the bench and read his decision into the record. *Id.* After asking a question about one portion of the judge's announced decision as to property division, counsel for the husband "stated he would 'like to make a statement for the record,' to which the court responded '[w]e are out of time, I'm sorry. . . . It would have had to be done prior to 5:00, but thank you very much for offering anyway.'" *Id.*

The husband claimed on appeal that he had not finished his cross-examination of his wife and was also prevented from presenting any rebuttal evidence. *Id.* at 289. After strongly disapproving of the trial court's decision to abruptly terminate the trial, the Eastern District of this Court held that, because he failed to make a timely offer of proof, the husband's "claims

---

1. I am not insensitive to the fact that this case involved questions of child custody and a request that all of Husband's contact with the children be supervised. Fortunately, the record indicates that the children's Guardian ad Litem conducted an independent investigation into the facts of this matter, actively

participated at trial, and presented a recommendation on the issues of custody and visitation that was consistent with the judgment.

2. Unless otherwise indicated, all references to rules are to Missouri Court Rules (2008).

lack specificity as to what evidence he would have presented if given additional time, and he has not provided us with an adequate record on appeal." *Id.* at 291. "A party who complains about the exclusion of evidence should make an offer of proof to inform the trial court of the content of the evidence proffered and to allow this court to determine the prejudicial effect of the exclusion." *Colquitt v. Muhammad,* 86 S.W.3d 144, 152 (Mo.App. E.D. 2002) (citing *Brady v. Brady,* 39 S.W.3d 557, 560–61 (Mo.App. E.D.2001)); *accord B.J.D. v. L.A.D.,* 23 S.W.3d 793, 797 (Mo. App. E.D.2000).

In the instant case, as in *McAllister,* we are unable to evaluate whether Husband suffered any prejudice as a result of the striking of his pleadings because he made no offer of proof as to what his evidence would be. Unlike *McAllister,* Husband did not even ask the trial court to allow him to do so.[3] Husband complains that he was limited to cross-examining Wife's witnesses, but does not identify what other witnesses he would have called or what their testimony would have been. Subject to a narrow exception not applicable here, "an appellate court does not review the question of excluded evidence without a specific offer of proof." *Ijames v. Ijames,* 909 S.W.2d 378, 379 (Mo.App. S.D.1995) (citing *In re Marriage of Swofford,* 837 S.W.2d 560, 563 (Mo.App. S.D.1992)); *May v. May,* 801 S.W.2d 728, 733 (Mo.App. E.D.1990).

Husband complains that the income tax statements offered by Wife as proof of his income were stale but did not request that he be allowed to introduce any more current evidence of his income. Husband did not indicate what evidence he would have offered that might have persuaded the tri-

al court to change its custody award. Husband's failure to make an offer of proof requires this Court to speculate as to what Husband's evidence might have been. *See Vehlewald v. Vehlewald,* 853 S.W.2d 944, 954 (Mo.App. E.D.1993).

As earlier indicated, Husband has the burden of establishing not just that the trial court erred, but also that he was prejudiced as a result. By failing to make an offer of proof, Husband has failed to provide us with the information we would need to determine whether the trial court's judgment might have been different if Husband had been allowed to present additional evidence. Without prejudice, there is no reversible error. *Brady,* 39 S.W.3d at 561. I would affirm the judgment.

---

**3.** I strongly disagree with the concept that a trial court's pre-trial announcement regarding any limitations it intends to place on a party's participation is the equivalent of denying a specific request to be allowed to make an offer of proof.